## Case No. 14,882.

### UNITED STATES v. CRAIG.

[2 Cranch, C. C. 36.] [1]

Circuit Court, District of Columbia. Dec. Term, 1811.

#### JURY—PEREMPTORY CHALLENGE.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

## Case No. 14,883.

### UNITED STATES v. CRAIG.

[4 Wash. C. C. 729.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1827.

#### COUNTERFEITING — APPLIANCES USED — DECLARATIONS—EVIDENCE—WITNESS.

1. In a prosecution for forgery of bank notes against one, the prosecutor, after laying a foundation by proof for connecting the prisoner with other persons in the general transactions, may give evidence that different parts of the machine employed in the counterfeiting were found in the possession of other persons respectively; but as to the effect of such evidence and the fact, the jury must decide.

2. The declaration of the prisoner, when he was apprehended, that he had never been at the house where he was apprehended till that time, may be given in evidence; not as proof of the fact, but to repel any unfavourable conclusion which his silence might have warranted.

[Cited in State v. Knapp, 45 N. H. 156.]

3. Comparison of hands is not evidence in a criminal case.

4. A paper found in a trunk, with a signature of a person other than the prisoner, and not addressed to him; is not evidence unless it is proved that he was the owner of the trunk, and in some way connected with the paper.

5. A question to a witness which ought not to be answered: for example, to state the contents of a written instrument: the court will not permit to be put to him, or to be answered. But if the question be one which he may answer or not; for example, if it tend to disgrace or criminate himself; it is a legal question, although the witness may decline answering it.

[Cited in Fries v. Brugler, 12 N. J. Law, 81.]

6. A witness is not bound to answer a question which may render him infamous, or may disgrace him.

7. The declaration of the prisoner to the witness, of the purpose for which he was going to the house where he was apprehended amongst counterfeiters, may be given in evidence; but the materiality of the evidence in relation to the innocence of his intentions and acts, will depend upon the accordance of these declarations with his subsequent conduct.

The prisoner [J. W. Craig] was indicted for counterfeiting sundry notes of different denominations, purporting to be notes of the Bank of the United States; and for having in his possession other blank notes, in the similitude of the notes of that bank, with intent, &c.

The following points of evidence were ruled by the court:

1. That the evidence given in the case of U. S. v. Moses [Case No. 15,825], of the press, and the parts fitting it, having been found, the former in the house of the brother of Reuben Moses, and the latter in the house of Reuben Moses, may be given in this case; the evidence being sufficient, in the opinion of the court, so to connect the prisoner with Johnson and Reuben Moses in the several transactions, as to let in the same. That evidence appears in the charge of the court in the case of U. S.

[1] [Originally reported from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

v. Moses [supra]. In counterfeiting bank notes, there are or may be various acts to be performed, and after a foundation is laid by proof of a connection between two or more persons in the general transaction, evidence may be given upon the separate trial of each, that the gravers, for example, were found in the possession of one of the parties, the press in that of another of them, and the ink and paper in that of a third. As to the effect of that evidence, and as to a connection between the parties; which the court assumes merely for the purpose of deciding on the admissibility of the evidence; these are questions proper for the decision of the jury.

2. That the declarations of Johnson and of the prisoner in the room where the notes were discovered; and also upon the examination before the mayor; that the prisoner had never before been at the house of Johnson, and had been there not more than twenty minutes; might be given in evidence; not to prove the truth of these declarations, but to repel any unfavourable conclusion from the silence of the prisoner, and his declining to give some explanation of the situation in which he was found.

3. The two first points of evidence, ruled in the case of U. S. v. Moses, were reargued in this case, and were confirmed by both judges; PETERS, District Judge, having been absent at the trial of that case.

[For hearing on a motion by defendant to show cause why he should not have delivered to him certain bank notes which were on his person at the time of his examination on the charge of forgery, see Case No. 3,321.]

WASHINGTON, Circuit Justice. It is insisted by the district attorney that by compelling the witness to answer the question "whether B. Johnson had told him that if he would come to his house on a certain day he would have Moses, the prisoner there:" the court departed from the reason and policy of the general rule first laid down; that the witness was not bound to disclose the name of the person from whom the confidential information came which led to the detection and apprehension of the accused. The court think quite otherwise. In the latter case individual security is not sacrificed to public policy, since it never can be material to the defence of the accused that the name of the informer should be disclosed in the trial. But it is quite otherwise in the former case. The situation in which the defendant was found, at the time of his apprehension, warrants the presumption of his guilt; and it may therefore be all important to his defence to repel this presumption by showing that he was at Johnson's by accident, or by the really insidious but apparently friendly invitation of the owner of the house; which latter fact the jury might possibly believe to be made out by the affirmative answer of the witness to this question. If this be so, it is certainly much better that the encouragement of persons to assist in detecting and apprehending those who are suspected of crimes, which the suppression of this evidence is designed to hold out, should be withheld, than that the safety of the accused should be hazarded, by denying to him the benefit of the disclosure. For myself I declare that I never will consent judicially to sacrifice any individual, whether it concerns his life, liberty or property, to notions of public policy, unless I am commanded by positive law to do so.

The district attorney having proved the hand writing of the prisoner, by his acknowledgment that a certain paper exhibited in court was written by him, asked the witness if he believed that another paper, purporting to be an order signed by the prisoner, directing his trunks to be delivered to the bearer, was of the hand writing of the prisoner. The witness answered that he had never seen the prisoner write, nor had he ever received a letter from him or corresponded with him; but that he believed the order to be his hand writing, having compared it with the writing which he acknowledged to be his. The district attorney then offered to read the order, which was objected to by the prisoner's counsel; the evidence being nothing but comparison of hands, which is not evidence in a court, much less in criminal cases. The counsel cited, Martin v. Taylor [Case No. 9,166]; Starkie, Ev. 654. In support of the evidence, were cited the following cases: 10 Serg. & R. 110; Bull. N. P. 232; 1 Bin. 664; 4 Esp. 117, 122; Id. (Day's Ed.) 273, note.

WASHINGTON, Circuit Justice. I confess for myself, that I never was well satisfied with the reason of the general rule, that comparison of hand writing is not competent evidence to go to the jury; and yet that a paper is such evidence, if the witness has seen the person write, and expresses his belief that the paper so offered is evidence of the hand writing of the person. For it seems to me that the rejected evidence is, in most cases, a much more satisfactory test of the hand writing than that which is admitted. Nevertheless, I consider the rule to have been for a long time so settled in England; and the decision of this court in the case of Martin v. Taylor, proceeded upon that ground. Farmers' Bank of Lancaster v. Whitehill, 10 Serg. & R. 110, decides that in a civil case, and in corroboration of other evidence to prove hand writing, comparison of hands is good evidence by the common law of Pennsylvania. Wherever therefore such a case comes before this court, that case will be respectfully considered. But this being a criminal case, I shall govern myself by what I consider the general rule settled in England, which excludes the evidence. The evidence must be overruled.

The order, and also another were afterwards admitted, on the evidence of a person who had often seen the defendant write. A paper found in a trunk at the half way house between Philadelphia and Trenton, with the signature of E. Gleeson, not addressed to the prisoner, was offered in evidence. The court

rejected the evidence until proof should be given that the trunk was the property of the prisoner, or in some way to connect the prisoner with the paper.

A question to a witness, which the law will not permit him to answer, as if he be asked to state the contents of a record; or to an attorney to disclose the secrets of his client; or, as in this case, whether his petition for the benefit of the insolvent law was not refused, and he remanded to jail upon the ground of his fraudulent conduct,—is improper, and the court will not permit it to be put. But if the question be such as if merely answered in one way would disgrace or criminate the witness, the question is proper; because it is the privilege of the witness to refuse to answer it, and not the law which forbids him to do so, as in the former case. But being a privilege merely, he may waive it, or give the answer.

WASHINGTON, Circuit Justice, delivered the charge; and after summing up the evidence, left it to the jury to decide upon the guilt or innocence of the prisoner, as to the several offences charged in the indictments. He stated that the materiality of his declarations to a witness, that he was going to Johnson's house, for the purpose of obtaining bail for his brother-in-law, Gleeson, which, contrary to his first impressions, he was now satisfied was proper evidence for the consideration of the jury (1 Starkie, Ev. 46–48, and cases cited), depended very much, if not entirely, upon the accordance of his subsequent conduct with these declarations. From that conduct the jury were to judge whether the prisoner was sincere in the avowal of his purpose in going, or merely intended to serve a purpose, and to provide testimony in his favour in case of need. If in the opinion of the jury the latter was intended, then the prisoner's declarations of the motive which took him to Johnson's, ought to be entirely disregarded.

The jury found the defendant guilty upon all the indictments.

C. J. Ingersoll, Dist. Atty., and Mr. Sergeant, for the United States.

Randall & Philips, for defendant.

NOTE. The weight of authority seems to be in favour of the doctrine, that a witness is not bound to answer a question which may render him infamous. or disgrace him, although it is not fully settled in England. 1 Starkie, Ev. 137, 145; 3 Starkie, Ev. 1742, note.