Diehl *v.* State.

## DIEHL *v.* THE STATE.

[No. 19,658.   Filed December 12, 1901.]

157   549
f164 235

CRIMINAL LAW.—*Affidavit and Information.*— *Abortion.*— *Separate Counts Charging Inconsistent Means.* — Under §1813 Burns 1901, providing the felony or misdemeanor may be charged in separate counts in the indictment or information to have been committed by different means, the State may, by separate counts or paragraphs, not only in the information, but also in the affidavit on which the information rests, in a prosecution under §1996 Burns 1901, for producing an abortion resulting in the woman's death,

Diehl v. State.

charge the offense to have been committed by the accused by different means or in different ways. *pp. 550-554.*

CRIMINAL LAW.—*Evidence.—Res Gestae.—Abortion.*—Where, in a prosecution for abortion, causing the death of the woman, a witness for the State testified to a part of a conversation overheard by her, between defendant and deceased, after the abortion was committed, the defendant was entitled to give the entire conversation for the purpose of rebutting and explaining the portion introduced by the State. *pp. 554-569.*

EVIDENCE.—*Conversation.*—It is error to permit a witness to testify as to his mere understanding obtained from a conversation, instead of relating the conversation. *pp. 569-571.*

APPEAL AND ERROR.— *Instructions.—Record.*— Available error cannot be predicated upon the action of the court in refusing an instruction offered by appellant where all of the instructions are not in the record. *pp. 571, 572.*

ABORTION.— *Necessity.— Evidence.*— In a prosecution under §1996 Burns 1901, for abortion, the absence of necessity of producing the abortion in order to save the life of the woman may be shown by circumstantial evidence. *p. 572.*

From Henry Circuit Court; *E. H. Bundy,* Judge.

John H. Diehl was convicted of abortion, and appeals. *Reversed.*

*T. Bagot, A. Ellison, C. K. Bagot, W. A. Kittinger, W. S. Diven, R. S. Gregory, W. Ball* and *W. A. Brown,* for appellant.

*W. L. Taylor,* Attorney-General, *C. C. Hadley* and *Merrill Moores,* for State.

JORDAN, C. J.—John H. Diehl, appellant in this appeal, together with Garrett D. Leach and Frank F. Diehl, was charged by affidavit and information with having committed on the person of Mary Farwig, at the county of Delaware and State of Indiana, the felonious crime of abortion. On November 7, 1899, the State filed in the Delaware Circuit Court an affidavit and information each of which contained three separate counts or paragraphs. Subsequently the State filed what is denominated a supplemental affidavit and information each embracing four additional counts. On the motion of appellant he was granted a separate trial, and on

Diehl v. State.

his application the cause was venued to the Henry Circuit Court. His motion to quash the affidavit and information and each count thereof was denied, to which he excepted, and thereupon entered his plea of not guilty. On the issues joined under this plea, the cause was submitted to a jury, who returned a verdict of guilty as charged, and that the age of appellant was thirty-six years. Over his motion for a new trial the court adjudged that he be imprisoned in the state prison for an indeterminate period of from three to fourteen years. From this judgment he appeals, and relies for a reversal thereof on the alleged errors of the trial court in denying his motion to quash the affidavit and information and each count thereof, and in overruling his motion for a new trial.

The prosecution is based on §1996 Burns 1901, §1923 Horner 1897, which reads as follows: "Whoever prescribes or administers to any pregnant woman, or to any woman whom he supposes to be pregnant, any drug, medicine, or substance whatever, with intent thereby to procure the miscarriage of such woman; or, with like intent, uses any instrument or means whatever, unless such miscarriage is necessary to preserve her life, shall, if the woman miscarries or dies in consequence thereof, be fined not more than $500 nor less than $50, and imprisoned in the state prison not more than fourteen years nor less than three years."

The affidavit and information, including that which is supplemental thereto, each consists of seven separate counts. Appellant's learned counsel contend that inasmuch as there is no express authority for an affidavit in a criminal cause to contain separate counts or paragraphs, such pleading, therefore, must be viewed and considered as a whole, and not in respect to its separate counts, and they assert that when the affidavit in question is so viewed and considered it becomes manifest that its several charges are so repugnant, self-contradictory, and antagonistic, that they destroy each other and thereby fail to show that appellant is guilty of any

public offense whatever. All of the counts in the affidavit are verified by the oath of one Samuel Cashmore. In some of them it is charged that the miscarriage in controversy was produced by appellant and his codefendants by administering to one Mary Farwig a certain drug and medicine. In others it is charged that the abortion which resulted in the death of this woman was accomplished by means of and by the use of a certain instrument called a "catheter." In others it is alleged that the instrument employed by appellant and his associates is unknown to affiant. While another count alleges that the miscarriage in question was procured by the administration and use of a certain instrument and substance unknown to the affiant. From an inspection of the affidavit and information it appears that the State was careful to charge therein by different counts the procurement of the miscarriage by the administration of different medicines or substances, and by the employment of different instruments, etc., in order to be prepared to meet any varying evidence in the case. Counsel assert that a grand jury may present by different counts in an indictment the various phases or means by which an offense is committed, but contend that this practice is not authorized or applicable when the prosecution is instituted through an affidavit and information. In other words, the insistence seems to be that the State in an affidavit cannot be permitted by using the conjunction "and" instead of "or," as used in the statute, to charge the prohibited act in question to have been accomplished by the administration of some certain drug, medicine, or other substance, or by the use of differently named instruments. In the appeal of *Rosenbarger* v. *State,* 154 Ind. 425, we held that the State in a prosecution under the statute which makes it an offense to administer, or procure to be administered, any poison, etc., might, in a single count of the indictment, by using the conjunction "and", charge the accused with having offended against the statute by alleging its violation by the means of as many of the pro-

Diehl v. State.

hibited acts as might be deemed necessary to render the pleading applicable to the evidence, without making it open to the objection that it is bad on account of duplicity, uncertainty, or that it is contradictory.

The case of *Deveny* v. *State*, 47 Ind. 208, was a prosecution for a misdemeanor commenced before a justice of the peace. This court in the latter case said: "There is no such thing as different counts in an affidavit. If the two offenses could be included in one indictment of two counts, we perceive no reason why they may not be in one affidavit and prosecution before a justice of the peace, and tried together."

*Stoner* v. *State,* 80 Ind. 89, was a prosecution on affidavit and information for the unlawful selling of intoxicating liquor. The information contained two counts based on separate affidavits, each of which charged differently the same offense. On reviewing a motion to quash the affidavit and information in that case, Niblack, J., said: "The court, as well as the parties, appears to have treated both the affidavits as the first and second counts of one and the same affidavit, and the appellant's motion was to quash the 'affidavit and information,' evidently referring to both affidavits as constituting one judicial instrument, or an integral part of a pleading. No objection is urged to the sufficiency of what was treated as the second count of the affidavit. We, therefore, assume that no reason existed for questioning its validity, and that as to it the motion to quash was correctly overruled. The second count being sufficient, there was no error in refusing to quash the affidavit as a whole, and no separate motion to quash the first count having been made, no question is now presented upon its sufficiency."

Our criminal code, §1813 Burns 1901, §1744 Horner 1897, provides that "The felony or misdemeanor may be charged in separate counts in the indictment or information to have been committed by different means." Under this section, where the State, as in the case at bar, institutes

the prosecution by affidavit and information it may, by sep-
arate counts or paragraphs, not only in the information, but
also in the affidavit on which the information rests, charge
the offense in question to have been committed by the ac-
cused by different means or in different ways.    Under such
circumstances, each count of the affidavit would be nothing
more than a separate affidavit, and the several counts con-
sidered together as integral parts would constitute one par-
ticular pleading, and like each paragraph or count of an
indictment or information must be sufficient within itself in
respect to the offense sought therein to be charged against the
accused person.    Under such circumstances, in order to ren-
der all of the several counts of the affidavit available to the
State on the trial, the information filed in the case must, by
separate counts, substantially correspond to or cover each
count of the affidavit.    Any or all counts which the informa-
tion did not apply to, or embrace, would, on the trial, cer-
tainly be of no avail.    Because the facts alleged in each
count of the affidavit must be verified by the oath of some
person does not necessarily require that the means charged
in one count by which the crime was committed must be
consistent with those alleged in another separate count or
paragraph of the same pleading.    The State being author-
ized, under separate counts, both in the affidavit and in-
formation, to charge the commission of the offense in con-
troversy to have been committed by various and inconsistent
means, we, therefore, conclude that appellant's objections
cannot be sustained, and the motion, therefore, to quash the
affidavit and information and each count thereof, was prop-
erly overruled.

Among the several questions presented for review in this
appeal, we are urged to consider the evidence which counsel
for appellant contend is not sufficient to support the judg-
ment.    As it will be necessary for us to refer to the evidence
in respect to some of the court's rulings to be reviewed, we
deem it proper at this point in our opinion to set out a

Diehl v. State.

synopsis or outline of the evidence given on the trial of the cause as it appears in the record.    The following, therefore, may be said to be a synopsis thereof as introduced on behalf of the State:    Mary Farwig, upon whom the abortion is charged to have been committed, was twenty-eight years old. About three years and over prior to October 25, 1899, she was employed as a housemaid or domestic at the home of the family of appellant's father, Philip Diehl, at the city of Anderson, Indiana.    Her home was at Richmond, Indiana, and the family of the said Philip Diehl, aside from himself, consisted of his wife, and a brother and sister of appellant, and two grandchildren of the said Philip Diehl.    For some time prior to October 25, 1899, Miss Farwig had been complaining in regard to her health, but in the main she was enjoying ordinary health.    On said 25th day of October, she left the home of appellant's father at Anderson to go to the city of Indianapolis, for the alleged purpose of visiting some relatives.    This, so far as the evidence discloses, is the last seen of her until the 26th day of October, 1899, when she appears to have registered at the Braun Hotel in the city of Muncie, Delaware county, Indiana.    She remained at this hotel for two days, and on the afternoon of October 27th she went out for a walk with some person not identified by the evidence.    On the evening of the same day, a woman, not expressly identified by the evidence, was taken by a hack driver in company with a person named Dennis O'Mera, and along with some other person whom the hack driver believed to be appellant, but he did not recognize appellant as the particular person in question.    These passengers were taken in the carriage by this driver to a certain street crossing in the city of Muncie, which crossing was within two squares or blocks of the residence of Dr. Garrett D. Leach, a codefendant of appellant in this prosecution.    On the afternoon of October 25th and on the afternoon of the day following appellant went by rail to the city of Muncie.    On the morning of October 28th Miss Farwig paid her bill at

the hotel where she had been stopping in Muncie, and left the house, and was not thereafter at said hotel.    The next that is disclosed in regard to her is that on the 31st day of October following she was at the residence of said Dr. Leach in Muncie, and Leach called in consultation Dr. Bowles, a prominent physician of Muncie, who, together with Dr. Leach, made, at the residence of the latter, an examination of Miss Farwig, and discovered that she was suffering from the results of a miscarriage.    From this time forward it is disclosed that she was visited and treated at the residence of, Leach by Doctors Bowles, Green, and Quick, all of whom were prominent physicians of the city of Muncie.    This treatment it appears continued until Miss Farwig died on the morning of November 4, 1899, at the city of Muncie, Delaware county, Indiana, from septic fever or blood poison. From an examination made by the physicians on October 31st, it appears that the miscarriage or abortion in question must have occurred from ten to twelve days prior to the aforesaid 31st day of October.    On one or two evenings about the middle of the week ending on Saturday, November 4th, the day of her death, appellant, as disclosed, rode on a street car in the city of Muncie to the street crossing nearest to the residence of Dr. Leach, and inquired at the time of the conductor in charge of the car, about where the home or residence of Leach was located.    Leach, as it appears, met appellant, and he and the former started in the direction of the doctor's home.    On the afternoon of November 3rd, the day preceding the death of Miss Farwig, Dennis O'Mera requested a young man who was intending to go to the city of Anderson to carry a sealed letter or note to Frank F. Diehl, appellant's brother and codefendant herein.    The young man in question it seems carried the note to Anderson, but not being able to find Frank F. Diehl, delivered the note or letter to appellant.    About 8 o'clock on the night of November 3rd, appellant went to the residence of Dr. Leach at Muncie to see Miss Farwig and was admitted to the room

where she was confined to her bed. Mrs. Anna McCusker, the nurse who was engaged in taking care of Miss Farwig, was in the room at the time, and she, as a witness for the State, testified on the trial that when appellant was admitted to the room he went to the bed where Miss Farwig was lying and greeted her in an affectionate manner with a kiss, and inquired about her condition. Miss Farwig, as disclosed by this witness, said to him that she was going to die, to which appellant responded: "Mary you must live for my sake." That thereupon appellant requested that the nurse, Mrs. McCusker, should leave the room. With this request she seems to have complied, and after she had left the room and had got into the hall she heard appellant and Miss Farwig in conversation in which the latter said to him: "John, we must tell the truth", and that appellant then said to Miss Farwig: "You listen to me. You listen to me." That she heard no more of the conversation that took place between these parties. She testified that she remained out of the room about fifteen minutes, and then returned, and that appellant again requested her to leave the room, which she did. The State also introduced evidence showing that Miss Farwig had stated to Dr. Leach that she was a Mrs. Williams, and represented that she was a married woman. It is also disclosed that appellant when he came to Dr. Leach's stated that his name was Williams, and that he and Miss Farwig were husband and wife. Subsequently, however, it appears he revealed his true name and exhibited his business card which disclosed his name and his residence and the business in which he was engaged. On the evening when appellant visited Miss Farwig at the residence of Dr. Leach, after learning of her serious condition and illness, he called upon Doctors Green and Bowles, who had been previously treating her, and requested them to visit her again and do whatever they could for her. The evidence further discloses that appellant on November 3rd, the time when he visited Miss Farwig as previously mentioned, remained at

the doctor's all night, and left for his home at Anderson the next morning before Miss Farwig died; her death occurring about 8 o'clock a. m. The evidence introduced in behalf of appellant also shows that Mary Farwig, the deceased, had resided in the home of the Diehl's in Anderson over three years, that she was well treated and highly regarded by the family. For several months before she left the home of appellant's father, on October 25th, she had complained of being afflicted with leucorrhea and other diseases peculiar to women, and had been in delicate health, and had made preparation to visit for a week or more some of her relatives at the city of Indianapolis, after which she intended to go to her home at the city of Richmond and rest for a period of time, and then if appellant's family desired her services again she would return to Anderson. It appears that appellant and his family believed that when Miss Farwig left the home of his father, on October 25th, that she had gone to Indianapolis, and were not advised to the contrary until on the afternoon of November 3rd, when appellant's brother, Frank F. Diehl, received a letter or note from Muncie. This letter or note was carried from Muncie to Anderson, and the carrier left it with appellant at his place of business to be delivered to his brother Frank, who it seems was absent at the time at some place in the city of Anderson. By this note, Frank F. Diehl was advised of the serious condition of Miss Farwig; that she was lying sick at the residence of Dr. Leach at Muncie. Frank, it seems, informed his mother of this fact, and the latter informed appellant. The family, it appears, held a consultation in respect to who should go to Muncie to ascertain what was the trouble with Miss Farwig, and to learn what, if anything, could be done for her. It was then suggested that the mother, Mrs. Diehl, should go, but she, being in feeble health and thereby unable to go, requested appellant to go to Muncie in her place. With this request he seems to have complied, and on the afternoon of November 3rd he

went to the city of Muncie, and, guided by the information contained in the letter to his brother Frank, he went to the home of Dr. Leach, where he found Miss Farwig very seriously sick. It is disclosed that he did all that he could to secure for her the necessary medical attention until he was advised by the attending physicians that her condition or illness would necessarily prove fatal. It further appears that neither appellant nor any of the members of the family knew anything in regard to the condition of Miss Farwig when she left Anderson on October 25th, aside from the fact that she was in ill health, as previously mentioned. Appellant at the trial as a witness denied that there was any guilty or immoral intimacy at any time existing between him and Miss Farwig. He testified that he knew nothing of any abortion or miscarriage by her, and that he neither procured nor had any connection whatever in procuring the miscarriage in controversy. The first knowledge which he had of her being at Muncie was when he was advised of that fact by his mother on November 3rd. That on the previous occasion, when it appeared that he was in Muncie, he was there for the purpose of consulting with a Mr. Glass, a contractor, in regard to the removal of appellant's factory from the city of Anderson. He denied that he stated that he was the husband of Miss Farwig, and also denied all of the facts disclosed by the State's evidence which had any bearing on the question of his guilt, but we do not deem it essential to give all of these facts and the denial thereof by appellant in detail.

Appellant's learned counsel specially argue and urge with much force two errors alleged to have been committed by the trial court. The first relates to the court's excluding certain evidence offered by appellant; the second, in admitting certain evidence on behalf of the State. As previously shown in the summary of the evidence set forth a Mrs. McCusker was introduced by the State as a witness in its behalf. She testified that she was present, as a nurse attending Mary

Farwig at the residence of Dr. Leach, on November 3, 1899, on the occasion that appellant called to see Miss Farwig. This witness also testified that on the night of that day, about 8 o'clock, appellant came to the residence of Dr. Leach, in Muncie, and was admitted to the room where Miss Farwig was confined to her bed, and that after greeting her as previously stated, the girl said to him that she was going to die, to which appellant responded that she must live for his sake. That thereupon he requested the witness to leave the room and in pursuance of such request she retired from the room, leaving him and the girl alone therein, and that they engaged in a conversation. The witness then testified that after she had left the room she overheard a part of this conversation; that she heard Miss Farwig say to appellant: "John, we must tell the truth", and that he then said to the girl in response to this, "You listen to me. You listen to me." We quote from the record the questions propounded to the witness, Mrs. McCusker, by the attorney for the State, and her answers thereto in respect to her leaving the room and the part of the conversation which she heard after she had retired. "Q. You may state whether or not you went out of the room? A. I did. Q. Did you hear any statement or conversation between him and the woman after you went out? A. Yes, sir. Q. State what you heard? A. Miss Farwig said, 'John, we must tell the truth,' and he said 'You listen to me. You listen to me.' Q. Did you hear any more of the conversation? A. No, sir, I did not. Q. What did you do? Did you close the door? A. I did. Q. How long did you remain out of the room? A. Fifteen minutes. Q. Then did you go back? A. I went back to give her some medicine. Q. You may state what occurred, if anything, when you went back. A. I went back, and he asked me to go out of the room again. Q. What did you do? A. I said 'certainly', and went out. Q. Did you hear anything at that time? A. No, sir."

When appellant was on the witness stand testifying in his

own behalf, his counsel endeavored to have him state what was said between him and Miss Farwig at the time and in the same conversation to which Mrs. McCusker had testified, and all that was said in that conversation after she had left the room. The first question propounded by counsel to appellant in respect to this conversation is as follows: "Q. State all that was said between Mary Farwig and yourself upon that occasion on that evening, in the room there at the time Mrs. McCusker, the witness who testified here in this case yesterday, on behalf of the State, was present, and all that was said at the time she was absent from the room, between you and deceased, Mary Farwig, in the same conversation that was entered upon before she left the room, if any was entered upon, and if any conversation was had?"

To the evidence sought to be elicited by this interrogation the State objected on the ground that appellant must be limited in testifying to that portion of the conversation testified to by Mrs. McCusker, and that he was not entitled to give what was said in the conversation between himself and Miss Farwig after Mrs. McCusker had left the room. Counsel for appellant then offered to prove by him in answer to the question propounded, the following: "That the deceased, Mary Farwig, invited the witness, Mrs. McCusker, to leave the room; that she left the room; that when she left the room the defendant asked the deceased what had gotten her into the condition she was then in, and how it happened, and how she came to the place where she was; that he had understood that the deceased had been to Indianapolis, visiting with her cousins there; that the deceased thereupon answered him, the defendant, that she did go to Indianapolis, but that she would never tell who it was that had gotten her into the condition in which she then was; that it had been done at Indianapolis, and that no one would ever know who had done it except herself and the doctor; that the de-

fendant there asked the deceased to tell all about it, and that she said in reply, no, that she never would tell them; that the defendant thereupon said to the deceased 'Well then, you want your mother here; you are in a very serious condition,' and that the deceased then said to the defendant 'No, I do not want my mother; I beg of you not to have my mother come', and that this was all of the conversation that occurred or was had in the absence of the witness, Mrs. Mc-Cusker, between the defendant and the deceased, upon the occasion inquired about."

The court sustained the objection of the State and held, in effect, that appellant might testify in regard to that portion of the conversation heard by and testified to by Mrs. McCusker, but that he was not entitled to give in evidence any part thereof which took place after she left the room, and about which she did not testify, and would not permit the evidence offered to be given to the jury, to which ruling of the court appellant duly excepted.

After the court had excluded the proposed evidence, other questions were propounded to appellant whereby he was asked if, during the conversation in question, Mrs. McCusker left the room, and he answered that she did, and was then asked to give the conversation between him and Miss Farwig, if any occurred after Mrs. McCusker had left the room at the time referred to by her in her testimony given on behalf of the State. To each of these questions the State objected on the grounds heretofore stated, and thereupon appellant offered to prove the conversation in question which he had with the deceased, and that all that he had with her was as stated in the aforesaid offer, each time setting it out in full. The court denied each of these offers to prove and would not permit the evidence proposed to be given, and appellant each time duly excepted. In fact the record discloses that the question by which the residue of the conversation in controversy was sought to be given in evidence was put to the witness in various forms. The several

questions as propounded and the offers made must have fully disclosed to the trial court that appellant desired to give to the jury the entire conversation had with the deceased at the time and upon the occasion testified to by Mrs. McCusker. If the remainder of the conversation in question, other than the detached portion detailed by the State's witness, was competent to be given in evidence for any purpose on behalf of appellant, it should have been admitted, for there is no more familiar rule of the law of evidence than that which affirms that if the evidence proposed to be introduced by a party in an action is relevant and admissible for any purpose, it must be received, and the court should advise or instruct the jury in regard to the purpose for which it is admitted, and confine them in its application to that particular purpose.

We may next inquire in respect to the limitation imposed by the trial court upon appellant to which he was confined in giving his version of the conversation in question. Counsel for appellant insist that the State by showing that the accused had a private conversation with the woman upon whom he was charged with having perpetrated the crime in dispute, and with whom the State also sought to show that he had entertained immoral and intimate relations, thereby sought to prove a guilty conversation or a guilty act, and by giving in evidence the part of the conversation which it did, that it endeavored thereby to show incriminating declarations upon the part of the accused; that by the court's ruling to the effect that he was not entitled to detail the part of the same conversation which occurred after the witness for the State had retired from the room, and about which she did not testify, that thereby he was deprived of an important right; or in other words it is contended that inasmuch as the State opened the door to a part of the conversation in question, that thereby appellant was entitled to the entire conversation for the purpose of explaining and rebutting the portion introduced by the State.

The rule is well settled that where a witness in a cause gives or details a conversation in part, the party against whom it is introduced as evidence is entitled to the whole conversation, at least so far as it may materially tend to impeach, rebut, explain, or qualify the portion introduced by his adversary. This rule is well affirmed by the decisions of this court, and other authorities. *Metzer* v. *State,* 39 Ind. 596; *Harness* v. *State, ex rel.,* 57 Ind. 1; *Fletcher* v. *State,* 49 Ind. 124, 19 Am. Rep. 673; *Carey* v. *City of Richmond,* 92 Ind. 259; *Comfort* v. *People,* 54 Ill. 404; *Phares* v. *Barber,* 61 Ill. 271; *Barbour* v. *Martin,* 62 Me. 536; *Frank* v. *State,* 27 Ala. 37; Jones on Ev. §§168, 822, 874, 875, and authorities cited in footnotes 2 and 3 in support of §822; Greenleaf on Ev. (16th ed.), §§201, 462b.

*Metzer* v. *State, supra,* was a prosecution for larceny. The State introduced a portion of a conversation which occurred between the accused and another person, in relation to the coat which was the subject of the larceny. The accused sought to call out from the witness the entire conversation, of which the State had given a portion. This the court denied, and its ruling in this respect on appeal was held by this court to be error. In considering the question, Downey, J., said: "It is a general rule that when part of a conversation, admission, or confession has been given in evidence against a party, he may, on a cross-examination, or by fresh evidence from his own witnesses, prove the residue of the same conversation, admission, or confession, so far as it relates to the same transaction. * * * Those parts of a conversation or confession which are against a party cannot be given in evidence, without opening the door for those parts which are favorable to him, and they may be called out by a cross-examination of the same witness by whom the unfavorable parts have been narrated." Citing authorities.

*Barbour* v. *Martin,* 62 Me. 536, *supra,* was an action against a physician for damages on account of the death of a

Diehl v. State.

woman due to the malpractice of the defendant in a case of obstetrics. The defendant introduced a Mrs. Graffam as a witness in his behalf to prove a certain conversation which she heard between the deceased wife and her husband. This witness stated when the deceased became worse that her husband went for the doctor, and that the wife said in the conversation that "she would rather have Dr. Martin because she had him once." The witness then stated that she had heard nothing said in the conversation about Dr. Martin "being away", and gave her reason for not hearing all of the conversation, as follows: "I was not in the room much, for I had the little girl to take care of." The plaintiff then called the husband of the deceased wife and proposed to prove by him the whole conversation that occurred on the occasion in question. The trial court excluded so much of the conversation proposed by defendant as occurred when the witness, Mrs. Graffam, was absent from the room. This ruling was held to be error. The court in reviewing the question as presented in that appeal said: "The remaining part of the conversation, as testified to by the husband, very materially modifies what had been previously said, or unsaid. The plaintiff was therefore entitled to it, even though it might be proved by another witness. The fact that one witness may not have heard all the conversation, or may have forgotten a portion of what he did hear, does not deprive the party of his right to the whole, if the whole can be proved. When a part or all of a conversation has been proved, we are not aware of any principle of law that will prevent any number of witnesses who may have heard it, from giving each his own recollection of it. It is sufficient that it is the same conversation, and relates to the same subject-matter."

Frank v. State, 27 Ala. 37, was a prosecution for murder. The State introduced a Mr. Bruton who testified in its behalf that the accused in a conversation with him made certain admissions and statements concerning the commission

of the crime. The defendant offered to prove that immediately after Bruton left, and in his absence, that he continued the conversation with another person to whom he gave a full and fair statement about the fight in which the fatal injuries were inflicted upon the deceased, stating in such conversation so continued the manner in which the fight had been brought about, and the manner in which the deceased had been wounded. This latter part of the conversation the witness Bruton did not hear. This proposed evidence the trial court rejected, on the ground that it was a different conversation than that testified to by the witness for the State. This ruling was held to be erroneous, the court saying: "It was the right of Frank to lay before them [the jury] every circumstance, connected with his statement to Mr. Bruton, which could aid them in coming to a conclusion upon this question of intent. He should not have been confined to what appeared in Mr. Bruton's testimony, but should have been permitted to submit to the jury the testimony which was offered by the prisoners and rejected by the court, as the same is hereinabove set forth. In rejecting the testimony thus offered, the court below erred. *State* v. *Curtis,* 12 Ired. 270; *United States* v. *Craig,* 4 Wash. C. C. 729; *Barthelemy* v. *People,* 2 Hill (N. Y.) 248; *Cornelius* v. *State,* 12 Ark. 782; 1 Starkie on Ev. 46-48; 2 Waterman's Arch. Cr. Pl. 212, 213."

On another view of the question, counsel for appellant contend that as the State, through its witness, Mrs. McCusker, introduced evidence to prove that appellant requested her to retire from the room in which he and the deceased were at the residence of Dr. Leach, and then in her absence held a private conversation with Miss Farwig, that, therefore, he was entitled, for this reason, to lay before the jury what was said by him in the conversation. That inasmuch as the State had introduced his action of engaging in a private conversation with the girl, that therefore he had the right to prove or lay before the jury all that was said

.in the conversation, not only to explain or rebut the part introduced against him, but as a part of the *res gestae* of his said act, and we are cited to *Morrow* v. *State*, 48 Ind. 432, in support of the latter proposition.  This case was a prosecution for the murder of one Christopher.  The theory of the State was that criminal relations existed between the accused and Mrs. Christopher, the wife of the deceased, hence, the motive upon the part of the defendant in the commission of the crime.  The State, to sustain its theory at least in part, proved by a witness that after the murder of the deceased by the defendant, that the latter went to the house where Mrs. Christopher, the wife, was in bed, and went to her bedside and held a whispered conversation with her. The defendant when giving evidence in his own behalf offered to show what he said to Mrs. Christopher in the conversation in question, proposed to prove that he spoke to her about employing a girl to help the family while in their "wounded condition."  The trial court excluded the evidence.  This ruling in that appeal was held to be erroneous, the court saying:  "It is exceedingly unjust to an accused party to admit his act in evidence, and to allow it to be insisted that the act is one of criminality or evidence of criminality, and at the same time to exclude what was said by the accused, at the time of and connected with the act, in explanation of its character.  The naked act may import or be construed as importing criminality, when, taken in connection with what was said, it may be innocent or even commendable.  It must be seen on a moment's reflection, that what, in this case, was produced by the officer of the State as an inculpatory fact, would, if accompanied by the words sought to be proved by the defendant, have been at once rendered innocent and harmless.  It would be no more unjust to the defendant, in such a case, to permit the State's attorney to prove such part of a conversation of the defendant as tended to make out the State's case, and exclude the residue because it was favorable to the defendant.  We had occasion

to examine the authorities on this subject, to some extent, in *Hamilton* v. *State,* 36 Ind. 280, 10 Am. Rep. 22, and that case and the authorities cited will sustain our ruling in this case. We hold that the ruling of the court was erroneous."

*Comfort* v. *People,* 54 Ill. 404, was a prosecution for the larceny of a watch. The People were permitted to prove by a witness that the defendant was seen in possession of the watch in question the next day after the larceny, and that he wanted to borrow $50 of a pawnbroker and pawn the watch as security. That the broker loaned him $40 and accepted the watch as such security. The defense then offered to prove by the witness all that the accused said in connection with the subject when he first offered to pawn the watch, and what he said as to how he obtained possession of the watch. The court refused to allow this proof to be made, and the ruling on appeal was held to be wrong, the supreme court saying: "The prosecution having introduced evidence that plaintiff in error was in possession of the watch the next day after it was stolen, and what he said with reference to borrowing the money and pledging it as security, as evidence of his guilt, he unquestionably had the right to prove all he said in that conversation, not only as a part of the *res gestae,* but as a part of the conversation. The fact that he had the watch in possession and was offering to pledge it for the money, was introduced to prove he was exercising ownership over it, and also, being recently after it was stolen, as evidence that he had perpetrated the larceny. These acts being relied upon to establish his guilt, he had a right to have the remainder of what he said at the time go to the jury to be considered." See, also, Jones on Ev. §347.

The authorities which we have cited fully sustain the proposition that whether the proposed evidence is viewed or considered as a part of the *res gestae* of appellant's act in holding a private conversation with the girl upon whom the crime was alleged to have been perpetrated, which act was laid before the jury by the State in the first instance, or

whether it be viewed or considered as it must be as a part of the same conversation continued by the parties in question in the absence of Mrs. McCusker, the evidence, in our opinion, was relevant and admissible, and should have been admitted.  If the jury believed it, it would have, at least, materially tended to rebut, explain, or qualify the portion of the conversation introduced by the State for the purpose of criminating appellant.  If the proposed evidence had been laid before the jury it would also have had a tendency to explain to them his act as disclosed by the State, of holding a private conversation with the deceased. It would, perhaps, have led the jury to infer that this conversation, under the circumstances, was a proper or innocent one.  The part thereof introduced by the State considered separately from the residue might well have led the jury to believe that the accused was endeavoring to induce Miss Farwig to suppress the truth in regard to the commission of the alleged crime or of criminating matters pertaining thereto; and unexplained or rebutted would certainly be damaging evidence against him.  The State, having in the first instance opened the door and let in the fact of the conversation and a part that was said therein, was certainly not in the position to exclude the residue thereof which was relevant to the portion which it had introduced.  The fact that the witness, Mrs. McCusker, did not hear the remainder of the conversation in question by reason of her being absent from the room, would not, under the circumstances, render it inadmissible as evidence in behalf of the defendant.  We conclude, therefore, for the reasons given, that the court, under the circumstances, erred in imposing the limit which it did in respect to the admission of the conversation and in excluding the evidence from the consideration of the jury.

Another material question is presented for review by appellant's counsel.  On the trial the State raised the issue as to whether appellant, when he visited Miss Farwig at the

home of Dr. Leach on the occasion previously stated, had falsely represented himself to be her husband. The State introduced Mrs. McCusker, the nurse, who testified that appellant on that occasion said that he was the sick woman's husband. Dr. Green, another witness on the part of the State, was not certain what was said by the appellant at that time on the subject, but testified that he thought that the gentleman to whom he was introduced at Leach's said the woman was his wife. The State also introduced Dr. Bowles as a witness to prove that appellant had at the time and on the occasion in question made the representation in regard to the woman being his wife. This witness, however, was wholly unable to give even the substance of what was said by appellant on the subject at the time referred to at Dr. Leach's. Thereupon the attorney for the State interrogated the witness as follows: "What was your understanding from the conversation between Leach and Diehl and yourself as to what relation he bore to this woman, whether husband or otherwise?" To this question appellant objected on the ground that it called for a mere conclusion, and did not call for a fact, etc., that what was said, if anything, should be given, and that the mere conclusion or understanding of the witness was not proper as evidence. This objection was overruled by the court, to which appellant excepted, and the witness then answered the question propounded as follows: "Well, I got the understanding that they were man and wife." Thereupon appellant moved the court to strike out this answer and evidence of the witness stating the same reasons at greater length than were stated in the original objection. This motion the court overruled, to which appellant excepted. In permitting this witness to give to the jury his mere understanding, which he obtained from the conversation referred to in the question propounded by the State, counsel for appellant contend that the court erred. In this contention we concur. Appellant in his evidence denied that he had either on the occasion in question or at any

other time represented or said that the woman was his wife. The burden was upon the State to prove the alleged fact to the satisfaction of the jury. It would seem unnecessary to refer to authorities in support of the well settled rule that a witness, as a general proposition, must be confined to the statement of facts, and cannot be permitted to indulge in or give in evidence his mere conclusions, opinions, or understanding. It was the province of the witness, under the circumstances, to state to the jury what was said by appellant or in his presence in respect to the subject in issue, and leave it to the jury to draw their own inferences from his statement. The understanding of this witness in respect to the alleged misrepresentation of appellant might, for aught appearing to the contrary, have turned the scale against him on this issue. As said in *Thompson* v. *Wilson,* 34 Ind. 94. "It would be very dangerous for this court to determine what evidence did or did not influence the jury." That the court erred in admitting this evidence certainly can not be successfully disputed. See, *Phares* v. *Barber,* 61 Ill. 271; Jones on Ev., §137.

It is next insisted that the court erred in refusing to give to the jury certain instructions at the request of appellant. It is strenuously urged by his counsel that thereby he was deprived of having the theory of his defense properly presented to the jury by instructions from the court. If this contention could be sustained it would follow that he was deprived of one of his essential rights. See, *Banks* v. *State, ante,* 190, and authorities there cited.

We cannot determine the questions raised upon the instructions refused, for the reason that the record discloses that some of those requested by appellant were given, while others were refused. The bill of exceptions containing the instructions given by the court on its own motion and those refused at the request of appellant, affirmatively discloses on its face that instructions numbered two, eleven, twenty-six, and twenty-eight, in the series requested by appellant,

were given by the court, but they do not appear in the bill of exceptions or elsewhere in the record so far as we have been able to ascertain. As the instructions mentioned are absent from the record, we are not in a position to decide that when they are considered in connection with those given by the court on its own motion that the jury were not fully advised in regard to every feature or phase of the case presented by the evidence.

It is next insisted that the evidence is wholly insufficient. Especially is it insisted that there is no evidence to show an absence of the necessity of producing the alleged abortion in order to save the life of the woman in question. The evidence in respect to the commission of the alleged offense is, as is usually the fact in cases of this kind, by reason of the secret nature of the offense, wholly circumstantial. As the judgment must be reversed for the errors mentioned, it would not be proper for us to express an opinion in regard to the sufficiency of the evidence, but we may suggest, in passing, that the absence of the necessity for producing the abortion in cases of this kind in order to save the life of the mother may be shown by circumstantial evidence. Ency. of Law and Proc., p. 190.

For the errors pointed out the judgment is reversed, and the cause remanded to the lower court, with instructions to grant appellant a new trial. The clerk will issue the necessary order for the return of the prisoner to the sheriff of Henry county.