GRECU *v.* STATE OF INDIANA.

[No. 29,085. Filed June 10, 1954. Rehearing denied September 15, 1954.]

*Edward M. Slocum* and *Inezellen Bales,* both of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General and *Owen S. Boling* and *Richard M. Givan,* Deputy Attorneys General, for appellee.

BOBBITT, J.—Appellant was charged by affidavit under Acts 1905, ch. 169, §367, p. 584, being §10-105, Burns' 1942 Replacement, with an attempt to procure the miscarriage of a pregnant woman. He was tried by the court, without the intervention of a jury, found guilty as charged, sentenced to the Indiana State Prison for a period of not less than three, nor more than fourteen years, and fined in the sum of $350.

Two errors are assigned.

1. That the court erred in overruling appellant's motion for new trial.
2. That the court erred in overruling appellant's petition to file belated supplemental motion for new trial after expiration of thirty days.

*First:* It is necessary to consider assigned error No. 2 before considering the questions raised by the motion for a new trial.

Appellant's petition to file belated supplemental motion for a new trial is not based upon facts discovered

after the time had expired for the filing of a motion for a new trial but, on the contrary, rests upon alleged matters of omission and commission during the course of the trial, and is not such that it may be construed as a petition for a writ of error *coram nobis* as was the case in *Sharp* v. *State* (1939), 215 Ind. 505, 19 N. E. 2d 942. Appellant's petition is what he has chosen to denominate it—a "Supplemental Motion for New Trial." Since it was filed after the statutory period for the filing of motions for a new trial had expired, the trial court did not err in refusing appellant permission to file his supplemental motion for new trial, and such petition presents nothing for our consideration on appeal. *Morton* v. *State* (1935), 209 Ind. 159, 171, 198 N. E. 307; *State ex rel. Lake* v. *Bain, Judge* (1948), 225 Ind. 505, 76 N. E. 2d 679; *Walker alias Walters* v. *State* (1948), 226 Ind. 552, 82 N. E. 2d 245.

See also: 1 Flanagan, Wiltrout and Hamilton, Ind. Tr. & App. Pract., §1820, p. 395.

*Second:* Appellant timely filed a motion for a new trial assigning as grounds therefor that the finding and decision of the court is not sustained by sufficient evidence, and is contrary to law.

In order to sustain the finding and decision of the trial court herein it was necessary for the state to prove beyond a reasonable doubt that appellant unlawfully procured the miscarriage of the person named in the affidavit. This may be shown either by direct or circumstantial evidence. *Gammack* v. *State* (1937), 211 Ind. 208, 6 N. E. 2d 328; *Diehl* v. *State* (1901), 157 Ind. 549, 62 N. E. 51.

There are three equally essential elements of the crime with which appellant is charged: (1) the use of an instrument to cause the miscarriage of the preg-

nant girl named in the affidavit; (2) that the alleged act was performed by appellant; and (3) that such miscarriage was not necessary to preserve the life of such girl.

A careful examination of the record discloses evidence sufficient to prove that the girl named in the affidavit was pregnant; that an operation was performed upon her by the use of an instrument; and that such operation produced a miscarriage. This appellant does not dispute. However, he contends that there is not sufficient evidence to show that he performed the alleged act.

The girl's father testified that he took her to the address in Gary which had been given to him by someone in South Bend. He then testified as follows:

"A. When I first went up there was some maid who met me at the door and she told me to go up into this waiting room, then I had a talk with Tommy.

"Q. The Defendant in this case?

"A. Yes.

"Q. What did you talk to him about?

"A. About an abortion. I told him I got this lady's card and her name was on it and I should come and see her, and anyway, I made the arrangement to have an abortion done on my daughter.

"Q. Did you talk about the amount you were to pay for it?

"A. Yes.

"Q. What was it?

"A. Three Hundred Fifty ($350.00) Dollars."

This witness further testified that after he was notified that the girl was ill he went back to the address in Gary where he had left her and they told him that they had taken the girl to the hospital; that he talked to "Tommy" who returned the $350 which had been

paid for producing the miscarriage, and that "Tommy" said that he would do everything in his power for "her."

The girl testified that a woman prepared her for the abortion, and that Dr. Grecu performed the operation; that she didn't see any instrument, but that he worked on her internally through the uterus and she subsquently became quite ill.

She further testified that Dr. Grecu took her to the hospital and that "the defendant" there represented himself as her "uncle."

The physician who operated on the girl at the hospital testified, in part, as follows:

"Q. When you operated what did you learn?

"A. We found there was a great deal of blood in the abdominal cavity; that there was a perforation in the anterior wall of the uterus and there were three (3) areas of the small intestine that had been traumatized to the extent there were three (3) perforations in the opening of the bowel.

"Q. Were these caused by an instrument would you say?

"A. Yes, it would have to be, because there was no diseased process."

None of this evidence was disputed.

It seems to us that the trial court might reasonably have found from this evidence that the act was performed by appellant herein.

It is further asserted that the evidence is not sufficient to show that the procurement of the miscarriage was not necessary to preserve the girl's life. The girl's father testified that when he learned that his daughter was pregnant he consulted his family physician who told him to see a certain judge in an adjoining county; that he took his daughter and went to see the judge

and a juvenile court officer who told them that the girl should go to a "home for girls in trouble"; that his wife and he talked the matter over and didn't like the idea of putting the girl in the home because "she would be all alone." This witness further testified that he later thought of an abortion and that he then went to South Bend where he learned of the place in Gary; that he called the place in Gary and made an appointment, then took the girl there and arranged with the defendant-appellant to procure the miscarriage.

The girl testified that she was "perfectly well"; that she "felt perfectly health" before the miscarriage.

There was other evidence that we deem unnecessary to summarize from which proper inferences might have been drawn by the trial court that the operation was not necessary to preserve the girl's life. This element of the crime may be proven by circumstantial evidence. *Gammack* v. *State* (1937), 211 Ind. 208, 211, 6 N. E. 2d 328, *supra;* *Diehl* v. *State* (1901), 157 Ind. 549, 572, 62 N. E. 51, *supra; People* v. *Malone* (1947), 82 Cal. App. 2d 54, 185 P. 2d 870, 873.

The testimony of the prosecuting witness (the girl named in the affidavit herein) was sufficient to constitute a prima facie showing of non-necessity to preserve life. *People* v. *Malone* (1947), 82 Cal. App. 2d 54, 185 P. 2d 870, 873, *supra.*

The statement of the girl named in the affidavit as the person upon whom the miscarriage was procured, that she was in perfect health and was perfectly well before the miscarriage, is undisputed. The evidence is sufficient to sustain the implied finding of the court that the production of the miscarriage was not necessary to preserve the girl's life.

The evidence is sufficient to sustain the finding and

decision of the trial court and they are not contrary to law.

Judgment affirmed.

Flanagan, C. J., Draper, Emmert and Gilkison, JJ., concur.

NOTE.—Reported in 120 N. E. 2d 179.