[Crim. No. 645. Second Appellate District, Division One.—June 5, 1919.]

THE PEOPLE, Respondent, v. CHARLES P. FLOOD, Appellant.

[1] CRIMINAL LAW — FORGERY — PREPARATION OF CHECKS ON TYPE-WRITER—TESTIMONY OF ACCOMPLICE—CORROBORATION.—In a prosecution for forging certain checks, the production in court of a typewriter and proof by an exemplar of the typewriting found upon the forged checks that the work done upon such typewriter is identical with that upon the forged checks, coupled with the testimony of the owner of the typewriter of its use on a certain occasion by the defendant, is inculpatory and tends strongly to connect the defendant with the offense, and is corroborative of the testimony of an accomplice that the checks were thus prepared.

[2] ID.—IDENTIFICATION OF DEFENDANT.—In such a prosecution, testimony of the bank teller who paid one of the checks that in his best opinion the defendant presented the check to him, that in size, height, and general appearance the man who presented the check compared favorably with the defendant, and appeared to be the same man, tends to establish such fact, and this is sufficient to entitle it to admission, the weight thereof being for the jury to determine.

[3] ID.—TESTIMONY OF ACCOMPLICE—CORROBORATION OF.—Under section 1111 of the Penal Code, strong corroborative evidence is not necessary. Even though the circumstances constituting the evidence offered and received in corroboration of the testimony of an

---

1. Forgery of or by typewriting, notes, **Ann. Cas.** 1916D, 784; 8 **Ann. Cas.** 86.

2. Admissibility of evidence of other offenses to prove identity of defendant, note, 3 **A. L. R.** 1558.

accomplice be slight, such evidence is nevertheless sufficient to meet the requirements of the law if, in and of itself, it tends to connect the accused with the commission of the offense.

[4] ID.—ATTEMPT TO COMMIT OTHER FORGERY—ADMISSIBILITY OF TESTIMONY OF ACCOMPLICE.—In a prosecution for forging checks, the testimony of an accomplice as to matters in connection with an attempt by defendant on the same day and at about the same time to pass a forged check other than those set forth in the information upon a different bank is admissible for the purpose of showing guilty knowledge and intent.

[5] ID.—CONVICTION OF ANOTHER FOR SAME CRIME—ADMISSIBILITY OF EVIDENCE.—In a prosecution for forgery, evidence that another person was charged with the same crime as the defendant and pleaded guilty does not tend to establish the innocence of the defendant, and, therefore, is not admissible.

[6] ID.—DECLARATIONS OF ANOTHER—HEARSAY EVIDENCE.—Evidence of the declaration of another person that he committed the crime of which the defendant is charged is hearsay and not admissible.

[7] ID.—APPEAL—ERRORS—WHEN NOT GROUND FOR REVERSAL.—Where the record on appeal discloses beyond a shadow of doubt that the defendant committed the crime with which he was charged, the judgment of conviction will not be reversed because of erroneous rulings of the trial court. To justify a reversal, it must be made to appear from the record that the trial court committed error and that a miscarriage of justice resulted therefrom.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank R. Willis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Paul W. Schenck for Appellant.

U. S. Webb, Attorney-General, Joseph L. Lewinsohn, Deputy Attorney-General, and Jerry H. Powell for Respondent.

SHAW, J.—Defendant, jointly with Robert A. Benkert, was, by information containing two counts, charged with the crime of forging two checks, copies of which are set forth in the information. Upon a separate trial given him,

4. Proof of other forgeries in prosecution for forgery, notes, Ann. Cas. 1912C, 91; 9 Ann. Cas. 456.

4. Evidence of other crimes in prosecution for forgery or uttering forged instrument, notes, 43 L. R. A. (N. S.) 754; 62 L. R. A. 224.

he was convicted upon both counts of the information. His motion for a new trial was denied, and from this order and the judgment of imprisonment pronounced he has appealed.

Of the several alleged errors assigned as grounds for reversal, the most important thereof, says counsel for appellant, is want of evidence sufficient to corroborate the testimony of Benkert, who was a self-confessed accomplice of defendant in the commission of the crime. It appears from the testimony of Benkert that in January, 1918, he and defendant, who were engaged in business together, conceived the idea of obtaining money from banks by means of forged checks. With that end in view, they procured a pad of checks upon the Exchange National Bank of Long Beach, and during the week ending with January 12, 1918, prepared the forged checks described in the information, one of which was made to the order of John Norton, signed by R. D. Lindsay and certified by W. J. Gardner, cashier of said Exchange National Bank, payable for the sum of $4,520.80; the other purported to be drawn by Ed Collins, payable to L. N. Brooks and likewise certified, calling for the payment of $4,855.75, and both of which purported to be indorsed by the payee named therein, and both of which were marked "O. K.," with the initials "J. A. G." following. The names of the makers and payees in these checks were fictitious and the name of Gardner, as well as everything contained in the checks, was forged. The initials "J. A. G." purported to be the initials of J. A. Graves, vice-president and manager of the Farmers & Merchants' National Bank, by which the checks were paid when presented. It was the custom of the bank on Saturdays to close its doors at 12 o'clock, as a result of which there was more or less congestion of business immediately before that hour. On Saturday, January 12, 1918, shortly before 12 o'clock, defendant and Benkert, pursuant to their agreement so to do, went to the Farmers & Merchants' Bank, at which time defendant presented one of the checks to one of the tellers therein, who paid the same; and Benkert presented the other check to one of the tellers, who likewise paid it. Thereupon they left the bank and subsequently divided the money equally between the two. That the uncontradicted testimony of

Benkert conclusively shows that the defendant committed the forgery and unlawfully and feloniously uttered, published, and passed the checks upon which he fraudulently and feloniously procured the money, admits of no controversy. Nevertheless, under the provisions of section 1111 of the Penal Code, such testimony is insufficient upon which to warrant the conviction, unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense. [1] It appears from Benkert's testimony that in the preparation of the checks a typewriter was used; that a few days prior to January 12th defendant and Benkert met in a saloon at Venice; that defendant left Benkert, stating that he would try to find a typewriter upon which to do the work; that shortly thereafter he returned and stated they could use the typewriter in the office of Mr. C. G. Parkhurst. Thereupon, it being in the evening and after dark, they went to the office of Parkhurst, Benkert taking in his hand the pad of checks, where the typewriting upon the checks was executed upon the typewriter of Mr. Parkhurst. The forging of the names of the purported makers to the checks was done in the office of defendant and Benkert, located in the city of Los Angeles. Other indorsements on the checks were made at the Farmers & Merchants' Bank. In corroboration of this testimony, Mr. Parkhurst testified that he remembered an occasion, soon after the first of the year, when Mr. Flood came to his office and asked for the privilege of using his typewriter; that it was after dark; that he replied in the affirmative; whereupon defendant went out and came back with Mr. Benkert, who had some papers in his hand; that they went into a back room and, turning on the lights, closed the door and used the typewriter; that he, telling them that when they got through to put out the lights and close the door, went away. The same typewriter was produced in court at the trial and an exemplar of the typewriting found upon the forged checks was introduced in evidence, which without contradiction showed that the work done upon the typewriter in court was identical with that upon the forged checks. That this evidence was inculpatory and tended strongly to connect the defendant with the offense, to our minds, admits of no doubt. (*People* v. *Morton,* 139 Cal. 719, [73 Pac. 609].) [2] Moreover, Mr.

Hogan, the teller who paid one of the checks, testified that, while he could not say absolutely that defendant was the man who presented the check, "my best opinion is that the defendant presented the check to me; that is my best opinion"; that in size, height, and general appearance he compared favorably with defendant and appeared to be the same man. While this witness was not absolutely certain of defendant's identity, nevertheless his testimony tended to establish such fact, and this was sufficient to entitle it to admission, the weight thereof being for the jury to determine. (*People* v. *Young,* 102 Cal. 411, [36 Pac. 770]; *People* v. *Rolfe,* 61 Cal. 540; *People* v. *Barker,* 114 Cal. 617, [46 Pac. 601].) In addition to all of this, there was other equally cogent evidence which clearly tended to connect defendant with the commission of the crime. [3] "Strong corroborative evidence is not necessary, . . . Even though the circumstances constituting the evidence offered and received in corroboration of the testimony of an accomplice be slight, such evidence is nevertheless sufficient to meet the requirements of the law if, in and of itself, it tends to connect the accused with the commission of the offense." (*People* v. *Martin,* 19 Cal. App. 295, [125 Pac. 919]; *People* v. *Garwood,* 11 Cal. App. 665, [106 Pac. 113]; *People* v. *McLean,* 84 Cal. 482, [24 Pac. 32].)

[4] For the purpose of showing guilty knowledge and intent, Benkert was allowed, over defendant's objection, to testify to matters in connection with an attempt made on the same day and at about the same time to pass another forged check upon the California Commercial & Savings Bank, which ruling is assigned as error. While appellant concedes the general rule that such evidence is proper, as held in *People* v. *Whalen,* 154 Cal. 472, [98 Pac. 194], and *People* v. *Bercovitz,* 163 Cal. 636, [43 L. R. A. (N. S.) 667, 126 Pac. 479], he nevertheless insists that the rule does not apply to such testimony when given by a codefendant. The fact that a witness is an accomplice constitutes no ground upon which to base an objection to his testimony, which as to its competency is governed by the same rules applicable to testimony of witnesses having no part in the commission of the offense charged. (*People* v. *Grundell,* 75 Cal. 301, [17 Pac. 214].) The provision of the statute requiring that the testimony of an accomplice must be corroborated by

other evidence tending to connect the defendant with the commission of the offense before he can be convicted, "does not mean that the accomplice may not be believed." (*People* v. *Hoosier*, 24 Cal. App. 746, [142 Pac. 514].) The testimony of Benkert with respect to the attempted negotiation of the check upon the California Commercial & Savings Bank is fully corroborated by two witnesses.

[5] It appears that one Carl Du Vey was charged with the same crime of which defendant was convicted, to which charge Du Vey entered a plea of guilty. Error is predicated upon the ruling of the court in refusing to permit the introduction of the judgment and records in the Du Vey case, and also in sustaining objections to testimony sought to be elicited from one Stemshorn that Du Vey cashed one of the checks set forth in the information charging defendant with the commission of the crime, and that Du Vey made statements to one George Pross which tended to show that Du Vey committed the offense, the purpose of all of which was to show that defendant did not commit the offense. In the case of *People* v. *Mitchell*, 100 Cal. 328, [34 Pac. 698], a general statement is made. that it is always proper to show that some person other than the defendant committed the crime with which he is charged. While a correct statement of the law as applied to the circumstances involved in that case, it is inapplicable where the offense charged could as well have been committed by a half dozen persons as by one. Conceding that Du Vey was guilty, such fact would not tend to establish the innocence of defendant. "The evidence offered by accused as to the commission of the crime by another person must be limited to such facts as are inconsistent with his own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence. . . . " (16 Corpus Juris, 560, sec. 1085.)

In *People* v. *Johnson*, 47 Cal. 122, the defendant and one Emerson had been jointly indicted for the crime of burglary. It was there held that the conviction of Emerson did not raise a presumption that defendant was innocent.

As to the testimony sought to be elicited from the witness Pross as to the statements made to him by Du Vey, it was clearly hearsay and the objection thereto was properly sustained. [6] Evidence of "the declaration of another

person that he committed the crime, is not admissible.''
Hence, the court did not err in sustaining objections to the
proffered evidence consisting of the record in the case of
Du Vey and his admission that he passed one of the checks.

[7] There are a number of alleged · errors predicated
upon rulings of the court in the admission and rejection
of evidence, appellant's contentions as to some of which
are disposed of in the views hereinbefore expressed. As
to the others, it may be said the record discloses be-
yond the shadow of doubt that defendant committed the
crime with which he was charged, and, conceding that some
of the numerous rulings of the court may have been erro-
neous, it is apparent that they did not result in a miscar-
riage of justice. ''Charity covers a multitude of sins,''
and it is equally true that section 4½ of article VI of the
constitution covers a multitude of errors; indeed, all errors
predicated upon ''the improper admission or rejection of
evidence, . . . unless, after an examination of the entire
case, including the evidence, the court shall be of the opin-
ion that the error complained of has resulted in a miscar-
riage of justice.'' To justify a reversal, it is not sufficient,
standing alone, that error· be made to appear, but ''that
the error complained of has resulted in a miscarriage of
justice.'' Unless such fact is made to appear from the
record, it is the duty of the court, notwithstanding the'
alleged error, to affirm the judgment.

An examination of appellant's objections to the informa-
tion, based upon alleged insufficiency thereof, shows the
attack to be groundless, and it is unnecessary to discuss the
same.

The judgment and order denying a new trial are affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied
by the supreme court on August 4, 1919.

All the Justices concurred.