[Crim. No. 2606. Third Dist. Oct. 11, 1955.]

THE PEOPLE, Respondent, v. JOSEPH HENRY TAYLOR, Appellant.

David Carl Dormeyer, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and G. A. Strader, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—An information containing two counts was filed against appellant, Count 1 charging him with the crime of burglary and alleging that on the 13th day of July, 1954, he unlawfully and feloniously entered, with intent to commit theft, an apartment occupied by one Inez Kelliher in the city of Sacramento; and Count 2 charging him with the offense of assault with a deadly weapon and alleging that on the 13th day of July, 1954, he wilfully and unlawfully and feloniously committed an assault with a deadly weapon upon one Inez Kelliher. The information also charged one prior conviction, it being alleged that the defendant was

convicted of the crime of escape, a felony, in the county of Riverside, State of California, on October 9, 1950.

Upon his arraignment, appellant was represented by the public defender and entered a plea of not guilty to Counts 1 and 2, and denied the prior conviction. Appellant later admitted the prior conviction. The matter was tried before a jury which, on September 24, 1954, returned a verdict of guilty upon each count of the information, finding the defendant guilty of simple assault, a lesser offense included within the charge of assault with a deadly weapon, as contained in Count 2.

Appellant's motion for a new trial was denied and judgment was pronounced. Appellant has appealed from the judgment and from the order denying his motion for a new trial.

Appellant attacks the judgment and order upon the ground that the evidence is insufficient to sustain his conviction on either count. Before giving a brief summary of the evidence we think it apropos to quote the following language of our Supreme Court in *People* v. *Newland,* 15 Cal.2d 678, at page 681 [104 P.2d 778]:

". . . The rule applicable where there is evidence, circumstantial or otherwise, that a crime has been committed and that the defendant was the perpetrator thereof, has been many times reiterated by the reviewing courts of this state as follows: The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. The determination of a charge in a criminal case involves proof of two distinct propositions: First, that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient

to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.'' (Citing numerous cases.)

In the evening of July 13, 1954, at about 11 p. m., one Inez Kelliher, alone in her apartment at 1320 P Street in the city of Sacramento, was assaulted in her darkened bedroom by an intruder who apparently entered through a window. She was seized by the throat and mouth and threatened with death, but she resisted and during the course of a struggle of some 10 minutes, more or less, suffered scratches, bruises, a cut hand, and a bite on the shoulder. She felt, but did not see, a knife in one of the hands of the intruder. Finally freeing herself, she screamed, which roused an alarm. Her assailant then fled by way of the lighted living room and she got a momentary glimpse of him sufficient to state he was wearing a short-sleeved upper garment. She saw him seize a jewel box as he fled and subsequently she discovered that a clock, purse, and other things belonging to her were missing. She identified the defendant in court as the man who assaulted and robbed her, and said she was satisfied in her own mind that he was the man.

The clock and jewel box with some of the other stolen goods were found on the 15th of July, 1954, in the locked trunk of one Dorothy Browning in an apartment at 1714 15th Street in the city of Sacramento where she, the defendant, and a number of other adults and children lived. The jewel box and clock were also identified as being in the immediate possession of defendant in the apartment as early as 6 a. m. on the morning of the 14th of July, 1954.

Stains of human blood, Type A, were found on several garments worn by the victim at the time of the assault and on the lower part of a short-sleeved sport shirt with collar and pair of khaki trousers belonging to the defendant. The victim's blood type was found to be the same.

Other persons living near the scene of the crime testified they saw a man run from the scene of the crime south on 13th Street and then to his right into an alley between Q and R Streets; in other words, on a direct route from the scene of the crime to defendant's residence. One Huey Robinson, a teen-age boy, identified this man he saw from his front porch as defendant from his body build and appearance,

but he did not see his face; he also said the man he saw wore a white T-shirt, i.e., a short-sleeved, collarless garment. This witness' teen-age sister, Ethel Robinson, a witness for the defense, from the same vantage point, similarly described this man who ran down the street, but she said it was not defendant and that she did not see this unknown man in a police lineup. The prosecution presented testimony designed to impeach this last part of her testimony. One Flora Chavez, another teen-ager, and witness for the prosecution, was with these two witnesses and saw the man in question, but she said it was not defendant. A Mrs. Kraus, a defense witness, testified she lived on 14th Street next to the alley behind the apartment of the victim, and from her back gate on the alley she heard screams at about 11 p. m. on the 13th of July, 1954, and saw a man run from the building at 1320 P Street and into the alley to a point about 25 feet from her. He then wheeled and ran down the alley away from her and toward 13th Street. She had the opportunity to observe him as he passed through a lighted area at the back of the building at about 40 feet distant. She described this man as of medium build and wearing a white T-shirt, but she was unable to identify defendant's sport shirt as the one this man was wearing on that night. She said the man she saw was not the defendant.

There was further prosecution testimony of statements of the defendant upon apprehension and questioning to the effect he had found the jewel box about 9 a. m. on the 14th of July, 1954, beside some railroad tracks under a pile of sheet metal in the vicinity of his residence while walking to a nearby grocery store; that he had first denied any knowledge of the jewel box; and that he had put it in the trunk of Dorothy Browning in the apartment without her knowledge. Defendant pointed out to officers the location where he found the box as under a pile of steel beams, not sheet metal.

The defendant denied these various purported admissions. He claimed that on the evening of the crime he had been playing dominos in a downtown domino parlor. He said that he had gotten up about sunrise on the 14th of July, 1954, and gone to a nearby store at 16th and R Streets for cigarettes, had found it closed, and returned home. On the way back, walking with his dog, his attention was directed to the jewel box lying under a metal pile near the railroad tracks, and he had picked it up and taken it home with him. He then went back to bed, leaving in plain sight the box and the

clock which he had taken from it beside the bed where he was sleeping, and later several persons came through his room where he slept with one of the children where they could have seen the two items. He said he was regularly employed and had no need to rob, and he denied having anything to do with the crimes. He said that he first denied any knowledge of the box when questioned because he was told it had been stolen and he didn't want anyone in the apartment to get into trouble.

Appellant explained that the blood on his trousers was that of Grace Browning, his girl friend, and she testified to the same effect. He explained the blood on his shirt as having come from a cut finger of one of the children in the apartment whose wound he had treated. There was evidence that Grace Browning's blood type was different from that found on the clothing of defendant.

Appellant's principal contention is that the evidence is insufficient as a matter of law to support the judgment in that such evidence is not adequate to identify him as the person seen by Mrs. Kelliher and the other witnesses. He argues that Mrs. Kelliher was not able to describe her assailant nor his clothing except that he wore a shirt with short sleeves; that witness Huey Robinson did not see the face of the man running by his house and only generally identified defendant as the man by his build, and yet two others from the same point of view stated defendant was not the man; that witness Betty May Kraus could not identify defendant as the man she saw running from the apartment building, and yet she had the best view of any of the witnesses as this man passed through a lighted area in front of her and then approached as close as 25 feet; that she identified the man as medium in size; and that all witnesses who were able to describe the clothing of the criminal stated he wore a white, short-sleeved T-shirt, whereas defendant's shirt with the blood on it and the one he supposedly wore that night was a loose-fitting sport shirt with a collar.

We believe that appellant's argument goes more to the weight of the evidence than to its sufficiency. It may be conceded that there was strong evidence tending to show that appellant was not the man who committed the offenses charged but there was also evidence that pointed to his guilt, and it was for the members of the jury who heard and observed the witnesses to weigh the evidence and resolve the conflicts therein.

The following quotation from *People* v. *Fleming,* 58 Cal. App.2d 37, at page 45 [136 P.2d 88], is quite applicable to the instant case:

". . . Conceding that an appellate tribunal is without power to disturb the findings of the jury on the ground of claimed insufficiency of the evidence unless it be made to appear clearly that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the trial court, appellant nevertheless earnestly urges that the complaining witnesses did not have reasonable or adequate opportunity to observe, and therefore identify, their assailant and that their testimony in this regard challenges credulity. In this claim appellant can not be upheld. What was said by this court in *People* v. *Hightower,* 40 Cal.App.2d 102, 106 [104 P.2d 378], is particularly pertinent here. 'While the claimed inconsistencies in the testimony of the foregoing witnesses, such as the positions they were in at the time when they claimed ability to see and identify appellant, as well as other claimed weaknesses in their testimony, undoubtedly afforded grounds for a forceful argument to the jury, nevertheless they cannot avail appellant as grounds for a reversal, because the evidence identifying a defendant as the perpetrator of the crime charged need not be positive and uncontradicted. As stated in *People* v. *Farrington,* 213 Cal. 459 [2 P.2d 814] : ''The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, and the uncertainties of witnesses in giving their testimony, were matters solely for the observation and consideration of the jurors in the first instance, and for the consideration of the trial court on motion for a new trial. It has approved the finding of the jury, and on appeal this court may not disturb such finding and the action of the trial court unless we can say, as a matter of law, that there was no evidence to support the conviction.'' ' ''

(See also *People* v. *Young,* 102 Cal. 411 [36 P. 770] ; *People* v. *Rolfe,* 61 Cal. 540; *People* v. *Flood,* 41 Cal.App. 373 [182 P. 766] ; *People* v. *Finkel,* 70 Cal.App.2d 508 [161 P.2d 298].)

In the instant case there was one witness who was able to identify appellant by his body build, and the victim who was able to identify appellant as her assailant, although she was not positive. It is true that the evidence as to identification was highly conflicting and that if it stood alone it is doubtful if the jury would have found appellant guilty. But there was also the testimony of the finding of the clock and

jewel box in a locked trunk in the apartment where appellant lived, together with appellant's denial at first of any knowledge of the jewel box and his later admission of placing it in the trunk. While he stated that he had found the jewel box under a pile of sheet metal, the place that he afterward pointed out to the officers was under a pile of steel beams. Furthermore, stains of human blood, Type A, were found on several garments worn by the victim at the time of the assault and on the lower part of a short-sleeved sport shirt with collar, and a pair of trousers, belonging to appellant, and the victim's blood type was the same. Appellant's testimony that the blood on his trousers was that of his girl friend was contradicted by the evidence that the girl friend's blood type was different from that found on the clothing of appellant. All of these circumstances no doubt added weight to the testimony of the People's witnesses as to the identification of appellant.

Our examination of the record convinces us that appellant was ably defended, that he received a fair trial and that the evidence is sufficient to support the verdict of the jury that appellant was guilty of the offense charged.

The judgment and order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.