[Crim. No. 817.   First Appellate District, Division One.—February 19, 1919.]

## THE PEOPLE, Respondent, v. WILLIAM S. CARD, Appellant.

[1] CRIMINAL LAW—MURDER IN SECOND DEGREE—CRIMINAL ABORTION— CORPUS DELICTI — EVIDENCE SUFFICIENT.—In this prosecution for murder alleged to have been committed by the defendant in the performance of an abortion, and in which the defendant was convicted of the crime of murder in the second degree, the evidence is examined and found abundantly sufficient to establish that the death of the young woman in question was due to an operation performed upon her, which was criminal in character as not necessary to preserve her life.

[2] ID.—VERDICT OF GUILTY SUSTAINED BY EVIDENCE.—The evidence was also sufficient to sustain the verdict of the jury holding the defendant responsible for the decedent's death by means of a criminal abortion.

[3] ID.—ACCOMPLICE—TESTIMONY CORROBORATED.—The testimony of a companion of the deceased, who the court instructed the jury was an accomplice, is also examined in such case and found to be sufficiently corroborated as to all its essential parts.

[4] ID.—UNPREJUDICIAL INSTRUCTION THAT ONE WAS AN ACCOMPLICE IN FACT.—Error cannot be predicated by the defendant on the action of the court in instructing the jury that a witness, a companion of the deceased, was, as matter of fact, an accomplice, where, throughout the trial, defendant had taken the position that such person was an accomplice whose testimony required corroboration.

[5] ID.—EVIDENCE—STRIKING OUT ANSWER NOT RESPONSIVE.—An answer by a physician who had treated the deceased some weeks previous to her death, which answer, not responsive to the question asked her, stated that she had herself admitted a previous attempt to bring about an abortion, was properly stricken out.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Affirmed.

The facts are stated in the opinion of the court.

Nathan C. Coghlan, R. P. Henshall and Samuel M. Shortridge for Appellant.

U. S. Webb, Attorney-General, John H. Riordan, Deputy Attorney-General, and Louis H. Ward for Respondent.

RICHARDS, J.—This is an appeal from a judgment upon conviction of the defendant of the crime of murder in the second degree, claimed to have been committed by the defendant in the performánce of an abortion upon the person of one Mabel Solomonson, who died shortly thereafter.

The main facts of the case which it is the claim of the prosecution were sufficiently established by the evidence to justify the defendant's conviction are these: On May 21, 1918, the deceased girl, accompanied by a female friend named Edna Swanson, came from Turlock to San Francisco, registering at the Argonaut Hotel, where they remained overnight, occupying the same bed. The following morning they removed to the Keystone Hotel, where they took a room. While there the decedent disrobed in the presence of her companion and took a sponge bath. She was then apparently in good physical condition and had no menstrual flow. At about half-past 11 in the morning of that day the two girls went to the Westbank Building, in this city, where the defendant, who is a physician, had his offices. They entered his reception-room and were there met by an assistant of the defendant, named Mrs. Hunt, who, being informed which of them was the patient, directed Miss Solomonson to go to another room down the corridor, said to be the defendant's private office. In a few moments the deceased returned and asked her friend for $20, upon receiving which she went back in the direction whence she had come. This was shortly before 12 o'clock. At 1 o'clock Mabel Solomonson was assisted into the reception-room from an adjoining room by a nurse named Mrs. Morgan, who was also one of the defendant's assistants on that day, and was delivered into the care of Miss Swanson, with the instruction to take her to her home or room and give her a dose of salts, which instruction the defendant had just directed her to give. At this time the Solomonson girl was greatly distressed, was weak and pale, moved with great difficulty, and had to be assisted to her room in the hotel which was about half a block away. Upon reaching her room she was so weak that her companion helped her into bed. She was then discovered to be bleeding profusely; a towel, identified as being of the same kind used in the defendant's office, was found upon her person. Her condition being alarming, another physician was called in, who recommended that the girl

be taken to the Emergency Hospital. Before the ambulance arrived the girl died, and the autopsy surgeon found that she had bled to death as a result of an operation for abortion which had very recently been performed upon her. The defendant's arrest and trial for murder followed, and resulted in his conviction of murder in the second degree.

[1] The appellant makes several points upon each of which he relies for a reversal. His first contention is that the *corpus delicti* was not proved. This contention is without merit. The autopsy surgeon who conducted the autopsy on the day of her death testified that except for her pregnancy and the abortion she was in the normal healthy physical condition for a young woman of her years, and that she had died as the result of the operation performed only a few hours before her decease. Miss Swanson, her companion during every hour of the time she was in San Francisco, except the hour or so when she was in the private office of the defendant, testified that the deceased was in good health and was not flowing up to the time she entered the defendant's offices, and that she emerged therefrom weak and distressed and hardly able to walk, and that on reaching her room a short distance away her bandages and clothing were saturated with blood. We think this evidence abundantly sufficient to establish that the death of this girl was due to an operation performed upon her which was criminal in its character as not necessary to preserve her life.

[2] The next contention of the appellant is that there was no sufficient evidence connecting the defendant with the commission of the crime. It is true that the deceased went from the offices of the defendant to an all too speedy death to permit her statement as to what had occurred while she was in the defendant's offices to be given in the form of a dying declaration, but we think that there is sufficient evidence otherwise to point unerringly to the defendant as the person performing the operation which produced her death. The evidence shows that the defendant maintained offices as a physician and surgeon in the Westbank Building with several connecting rooms, one of which was his private office and another was his reception-room, to which those seeking his services were in the first instance admitted; that between these two rooms was a system of bells so arranged that a button

touched in the reception-room conveyed the information to the occupant of the private office that a patient was in waiting, and the touching of a button in the private office by its occupant informed the assistant in the reception-room that the patient should be sent to the private office. The evidence shows that these responding bells were rung shortly after the deceased and her companion were admitted to the defendant's reception-room. The evidence further showed that no other physician than the defendant occupied his private office. The evidence proceeds to show that when the defendant's assistant was thus advised that the defendant was in his private office and ready for the patient, the deceased was directed to his door; that she returned in a few moments to the reception-room to get a sum of money, upon receiving which she went back into the defendant's private office; that she remained away from the reception-room, where her friend remained in waiting, for the space of about an hour, when she was helped into the reception-room by one of the defendant's assistants, and there given over to her friend with the instruction that the patient was to be taken to her home or room and given a dose of salts. She was then in a condition indicating to the point of certainty that during the hour spent in the defendant's private office something had been done to her which had destroyed her immediately preceding state of normal health, and left her weak, distressed, hardly able to walk, and bleeding to an extent which within a short while sapped her life; upon reaching her room, less than a block away, she had to be put to bed, and there was then found upon her a towel identical with those in use in the defendant's office; she died within a very few hours, and, as we have seen, her death was due to an abortion performed that day. When the defendant was interviewed by a detective officer, shortly after the girl's death, his demeanor, words, and actions were very far from those of an innocent man. We think this evidence was sufficient to justify the finding of the jury holding the defendant responsible for the decedent's death by means of a criminal abortion.

[3] The appellant's next contention is that the witness Edna Swanson was an accomplice of the defendant in procuring the operation to be performed upon her friend, and that her testimony was not sufficiently corroborated to have

justified its acceptance by the jury as the basis of its verdict. The question whether the witness was or was not an accomplice within the purview of the law relating to this class of cases was removed from consideration by the court's instruction that she was such accomplice; but conceding this, we are satisfied that her evidence was sufficiently corroborated as to all of its essential parts. Her story as to what occurred within her knowledge and observation while in the office of the defendant is supported by the testimony, reluctantly drawn from them, of the two witnesses who were acting as the defendant's assistants on that fatal day. It is shown sufficiently by their halting and hesitating admissions that the defendant was in his office at the time, fixed by the witness Swanson, of the presence of herself and companion there; the system of bells as testified to by one of them agrees with the statement of the alleged accomplice as to the sounding and significance of the bells, while her evidence as to the return of the deceased to her with the statement that she was to be taken home and given a dose of salts is supported by the admission of the witness Mrs. Morgan that such an instruction was received by her from the defendant and was conveyed at that time. The witness Swanson's testimony as to the physical condition of the deceased immediately before and immediately after the visit to the defendant's office is supported by the evidence of the autopsy surgeon as to the normality of the deceased woman's physical condition outside of her state of pregnancy. We think the foregoing constitutes sufficient corroboration of this witness, assuming her to be, as the court instructed the jury, an accomplice.

[4] With respect to the next contention of the appellant, to the effect that the trial court committed reversible error in giving an instruction as to a matter of fact, by its instruction that the witness Swanson *was* an accomplice, little need be said. The record before us discloses that throughout the trial and upon this appeal it has been the defendant's consistent position that the witness Swanson was an accomplice whose testimony required corroboration. In harmony with this position the defendant requested a set of instructions upon the subject of accomplices and their corroboration which could only have had reference to the witness Swanson. These requested instructions were not given by the court, for the reason that the subject was covered by its own instruction

upon the subject to which the appellant now urges this objection. He cannot, therefore, be in a better position than he would have been had his own requested instruction been given, in which event he could not here be heard to urge his present objection.

As to the other instructions which the appellant requested, and which for the same reason were not given, no special emphasis is laid upon them upon this appeal; but we are satisfied from a careful reading of the entire body of the court's instructions that the jury were fairly, fully, and correctly instructed as to the law of the case.

The final contention of the appellant is that the trial court committed prejudicial error in striking out the testimony of one Dr. Sarkasian, who undertook to give evidence as to statements which the deceased girl had made to him some weeks prior to her death while she was in Denver, Colorado, and while he was treating her for anaemia. The answer of this witness which was stricken out was given in reply to the following question asked by counsel for the defendant: "Q. Did you discover from your examination of her whether or not there had been an attempt made previously to bring about an abortion?" to which the witness replied: "A. Well, she admitted that herself."

[5] The court properly ordered that answer stricken out. It was not responsive to the question. It was merely the conclusion of the witness as to the effect of whatever statement the deceased had made to him, and did not purport to be such statement. Moreover, the defendant was not prejudiced by the ruling of the court in this regard, since the record shows that the witness proceeded to answer the question correctly and fully by stating that as a result of his physical examination of the deceased while his patient upon this occasion, he found that an abortion had previously been attempted, apparently by herself. We therefore find no reversible error in the record before us.

Judgment affirmed.

Waste, P. J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 21, 1919, and a petition to

have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 18, 1919.

All the Justices concurred.