[Crim. No. 1809. First Appellate District, Division One.—November 27, 1934.]

THE PEOPLE, Respondent, v. OSCAR W. DeVAUGHN, Appellant.

Myron Harris, Wm. H. Older and H. L. Richardson for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

THE COURT.—Appellant was charged with the crime of murder as the result of an alleged criminal operation performed upon the person of one Louise Swartz. He was convicted of murder in the second degree. From the final judgment of conviction and from an order denying his motion for a new trial defendant appeals.

Several grounds are urged for a reversal. It is first claimed that the evidence is insufficient to support the verdict. While the evidence is conflicting in some minor details, in our opinion it is amply sufficient. Such evidence in substance shows that deceased was the wife of one Manuel Swartz. There were two children issue of the marriage. In the month of January, 1933, deceased informed her husband she was pregnant and that she intended to have an abortion performed, as she did not desire to have any more children. At this time deceased was in a normal condition. Her husband told her it was a very dangerous thing to do but that it was a matter she would have to decide for herself. About February 1st of the same year deceased requested her husband to take her to defendant's office. The husband, accompanied by her, the two children and a lady friend, drove to the office of the defendant. The friend accompanied the deceased to defendant's office, the husband and children remaining in the automobile. There is evidence to show that deceased consulted defendant, informing him that she had a backache, a headache and was also suffering from an offensive discharge. Defendant requested the friend to retire to the reception room, deceased remaining with defendant in his private office. An employee of defendant was ordered to have the deceased disrobe and prepared for an examination. There is no direct evidence as to what took place at this time, defendant not having taken the stand. As to the appearance of the deceased after she left defendant's office, there is a conflict in the evidence. There is evidence to show, however, that when she left the office she was quite pale and was restless all night. It also appeared that her private parts were packed. Deceased again visited the office of defendant on three succeeding days, where she remained about an hour on each visit. Upon leaving the office on these occasions she was pale and very sick. After the last visit the condition of the deceased grew alarm-

ing and another physician was called in to attend her. He immediately ordered her to a hospital and, concluding she was suffering from the effects of an abortion, he called in other physicians who confirmed his opinion. Deceased died on February 10th. An autopsy revealed that her death was due to a blood clot which had formed as the result of an infection of the uterus due to an abortion. The clot had caused the left lung to completely collapse and solidify. The autopsy further revealed that the uterus was swollen and inflamed and that an abortion had been performed. There was also a pusy discharge from the vagina. The police authorities were notified. A search was made of defendant's office and his files of patients did not include a card for deceased. After indictment defendant was asked whether he was to set up the defense that he had never treated the deceased or that he had treated her for some ailment, and he answered he did not know. The evidence shows that a criminal agency was responsible for the death of deceased and points unerringly to the defendant as the person performing the operation upon the deceased which caused her death. (*People* v. *Card*, 40 Cal. App. 22 [180 Pac. 53].)

 It is next urged that the trial court committed prejudicial error in admitting in evidence a business card of the defendant. It appeared that a like card was seen in the purse of deceased on the back of which appeared the words ''received $25.00''. The evidence was harmless. The jury was instructed to disregard the words in question, and the evidence upon the subject was stricken from the record and the jury instructed to disregard it. It must be presumed that the jury followed the instructions of the court.

 It is next urged that the trial court erred in admitting certain alleged hearsay evidence of a physician in relation to blood transfusion which was given to the deceased. There is no merit in the contention. The doctor was asked concerning the character of the blood of the donor and he testified that it was compatible with the blood of the recipient. This did not constitute hearsay, but rather the statement of a positive fact within the knowledge of the witness.

 Complaint is next made of alleged prejudicial misconduct of the district attorney in his argument to the jury, in using certain language which it is claimed indicated that defendant was a member of the negro race. We have been unable to find in the record any language that would so indicate, but how or in what manner this could prejudice the defendant we are at a loss to know. Moreover, defendant was present at the trial and could be seen by the jurors.

No error has been shown and the evidence being amply sufficient to support the verdict the judgment and order must be and they are hereby affirmed.