THE STATE v. ANNIE SMITH, Appellant.—76 S. W. (2d) 1077.

Division Two, December 1, 1934.

*Lawrence E. Tedrick* and *Finch & Finch* for appellant.

*Roy McKittrick*, Attorney General, and *Olliver W. Nolen*, Assistant Attorney General, for respondent.

TIPTON, J.—On January 4, 1933, an information was filed in the Circuit Court of Butler County, Missouri, charging the appellant with manslaughter, in that she caused the death of Katherine Arnold in attempting to produce an abortion upon her, in violation of Section 3991, Revised Statutes 1929 (Mo. St. Ann., sec. 3991, p. 2797). A change of venue was granted and the case was sent to Ripley County. There the trial resulted in a verdict of guilty and appellant's punishment assessed at three years in the penitentiary. From this judgment appellant has duly appealed to this court.

One of the assignments of error is that the trial court should have given appellant's instruction in the nature of a demurrer to the evidence at the close of all the testimony. This calls for a statement of the facts full enough to determine the merits of such assignment.

The deceased was a school teacher and resided with her parents in Butler County, Missouri. On the 13th day of October, 1932, she became seriously ill, and on the advice of Dr. Bell, of Malden, Missouri, she was taken to a hospital operated by Dr. W. L. Brandon, of Poplar Bluff, where she was confined until her death on October 22, 1932.

Dr. Brandon testified that he examined her continuously during the period she was confined in the hospital; that she was running a temperature; she was very tender in the lower part of her abdomen; and that her ailment was pronounced as septicaemia. He further testified that the cervix of the womb was soft, that in his opinion she had been recently pregnant; that she had been "tampered with;" and that she died as a result of the septicaemia caused by an abortion. He then testified in regard to the dying statement made by the deceased to him on Thursday preceding her death on Saturday. The witness stated while on that date, she was in complete control of her mental faculties, "she was going to die and said so;" that on October 5, 1932, she went to Poplar Bluff to the Smith Hospital, at which

time she was given an anaesthetic by Dr. J. Elliott Smith and "an abortion was produced by Dr. Annie A. Smith" (the appellant); that she had an agreement with the appellant to perform the operation for fifty dollars ($50.00) and ten dollars ($10.00) for the anaesthetic; that after the operation she left the hospital and stayed all night with a friend in Poplar Bluff; that the following day she began to cramp and hurt and she expelled something; and that later she was taken by her parents to see Dr. Bell, at Malden.

Other witnesses testified to similar dying statements made by the deceased to them.

On behalf of the appellant, Dr. J. Elliott Smith testified that the deceased just came to the hospital maintained by himself and the appellant; that he examined the deceased and found that she had a temperature of 100, a pulse of 95, and her respiration was 21; that she was highly nervous; that on her womb were a few small wounds; and that she was not pregnant; that no anaesthetic was given her and no abortion was performed; and that the patient was given a spinal treatment and a medicated douche to kill infection of the sores found on the womb. The appellant testified that she was an Osteopathic physician and surgeon and corroborated the testimony given by her husband, Dr. J. Elliott Smith.

█ I. The information charged that the appellant was a duly licensed physician and that the appellant used certain instruments upon Katherine Arnold, a pregnant woman to perform an abortion and that she died as a result of such unlawful operation.

To support the information it was necessary for the State to prove that the appellant (1) used an instrument upon Katherine Arnold, with the intention of producing an abortion; and (2) that such a procedure was not necessary treatment for the purpose of saving her life; and (3) death resulted. [State v. Anderson, 250 S. W. 68, 298 Mo. 382; Sec. 3991 (Mo. St. Ann., sec. 3991, p. 2797.]

█ Appellant contends that even if there were substantial evidence to show that she did perform an abortion on Katherine Arnold and death resulted from such operation, yet the State failed to prove that the abortion was not necessary to save her life. As above stated the burden to make such prof is upon the State. This was definitely settled in the case of State v. DeGroat, 259 Mo. 364, 168 S. W. 702. What is necessary for the State to meet such proof is well stated in the case of State v. DeGroat, supra, where we said:

"The courts everywhere have recognized the utter futility of actual proof, and have with practical unanimity held that a prima-facie case is made out by proof of the fact that the woman was in good health, or in her usual and ordinary condition of health, immediately prior to the commission upon her of the abortion charged. [State v. Sonner, 253 Mo. 440; State v. Casto, 231 Mo. 398; State v. Dargatz, 244 Mo. 218; State v. Longstreth, supra; State

v. Wells, supra; Dixon v. State, 46 Neb. 298; People v. Balkwell, 143 Cal. 259; 1 R. C. L. 78.]''

In the case of State v. Goodson, 252 S. W. 389, 299 Mo. 321, l. c. 331, we said:

''Aside from the foregoing, even if the evidence had disclosed that defendant performed an operation on deceased which produced an abortion, his conviction could not be permitted to stand in the absence of substantial testimony tending to show that deceased was in good health before the operation and that it was not necessary that an abortion should be produced.''

A careful examination of the record fails to disclose any evidence that the operation was not necessary to save the life of Katherine Arnold. It was not shown that immediately prior to the alleged abortion that she was in good health or in her usual and ordinary condition of health. The fact that she stayed all night at the home of a girl friend in Poplar Bluff the following night of the alleged abortion is no probative force in determining the state of her health on that date. On the contrary, the only evidence in regard to the condition of her health was produced by the appellant, which was that her temperature was 100, her pulse was 95, and her respiration was 21; that she was highly nervous, and that her heart was affected.

For these reasons the instruction in the nature of a demurrer should have been given and therefore, it will not be necessary to discuss other assignments of error.

In order that the State may be afforded an opportunity to produce additional testimony, if it has any, we will reverse and remand the cause to be proceeded with in conformity with the views heretofore expressed. All concur.