[Crim. No. 3352.   Second Appellate District, Division Two.—October 21, 1940.]

THE PEOPLE, Respondent, v. MARIA LOPEZ GOMEZ, Appellant.

Ward Sullivan for Appellant.

Earl Warren, Attorney-General, and Burdette J. Daniels, Deputy Attorney-General, for Respondent.

WOOD, J.—Appellant was charged in count I of the information with the crime commonly called abortion and in count II with the crime of murder.   A jury returned verdicts finding her guilty on count I and guilty of murder in the second degree on count II.

Appellant concedes that the evidence is sufficient to establish that the death of the woman involved resulted from an

abortion, but argues that it was not established that the abortion was the result of a "criminal agency"; also that it was not sufficiently established that appellant was responsible for the abortion.

In October, 1939, Jovita Ochoa, accompanied by Maria Jacquez, with whom she was living, went to the residence of appellant and told her that she had not menstruated during the previous month. Appellant told Miss Ochoa that she would charge $25 for an operation but Miss Ochoa replied that she did not have the money and would return as soon as she could raise it. These facts appear from the testimony of Miss Jacquez. Aurora Egiarte testified that on December 5, 1939, she accompanied Miss Ochoa to the residence of appellant and at that time appellant stated that she would "fix her up" for $35. Miss Ochoa agreed to return the following Monday, December 11. It was also arranged that Miss Ochoa was to stay at appellant's home after the operation, for which an additional charge of $15 would be made. Appellant gave instructions to Miss Ochoa as to how to prepare for the operation. On December 11 Miss Ochoa told Miss Jacquez that she was pregnant and was going to appellant's home to be relieved. She left a note addressed to Miss Jacquez, reading as follows: "Maria: I am going to be at the home of the Mrs. If you can, see me tomorrow in the afternoon, because I do not know how I will be in the morning. Maybe I will not be alleviated. I have no assurance as to that. Only God knows that. Ask God for me that I will come out all right. Good-bye Jovita."

Miss Jacquez returned to appellant's residence on Tuesday, December 12, but was unable to find appellant. On the following day she again called upon appellant and appellant then told her that Miss Ochoa had not been back to see her. On the evening of the same day Miss Jacquez and Miss Egiarte again went to appellant's home to inquire for Miss Ochoa. Miss Jacquez told appellant of the note which had been left by Miss Ochoa and stated that if appellant would not inform her concerning the whereabouts of Miss Ochoa she would turn the note over to the police. To this appellant replied, "no, don't deliver that to the police department; destroy it". Appellant also stated that she had had bad experience with the police and that the best thing for all of

them to do was to be "in accord" and say that Miss Ochoa had gone out shopping and had not returned.

A human body was found upon the railroad tracks near Bandini station in Los Angeles at about 8 o'clock in the morning of December 13. The body had been run over by a train and was "in two separate pieces". There was no evidence of blood upon the tracks or ground at or near where the body was found. This body was later identified as that of Miss Ochoa. The autopsy surgeon testified that the uterus showed a recently dilated cervix, that the uterus was relaxed and not contracted and that the uterine canal was about the size to be found in a pregnancy of four months. He found the cause of death to be "exanguination following abortion". He gave the opinion that death had occurred within twenty-four hours from the time the body was found and that the body was dead at the time it was placed upon the railroad tracks. The surgeon further stated that after the expulsion of the fetus under normal conditions the uterus would contract immediately and prevent hemorrhage but that in the present case the uterus had not contracted. He further stated that if a normal body had been placed upon the railroad tracks a great quantity of blood would be found on the ground in the area where the body was struck. The surgeon stated that he could not determine how the abortion had been brought about.

A mirror, compact and lipstick container, which were identified as the property of Miss Ochoa, were found in an incinerator on the premises of appellant. Appellant was not sworn as a witness on her own behalf.

■ It was the function of the jury to draw reasonable inferences from the circumstantial evidence before it. In the recent case of *People* v. *Newland,* 15 Cal. (2d) 678 [104 Pac. (2d) 778], it is said: "If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury." ■ We are satisfied that the inferences drawn by the jury are reasonable and that the verdicts are sufficiently supported not only in the implied finding that death resulted from an abortion but also that the abortion was caused by the criminal act of appellant.

Appellant complains that the prosecution failed to establish by what particular means the abortion was brought about and refers to the information, in which it is charged that appellant did "use and employ an instrument or other means upon the person . . . ". The language of the indictment follows the language of section 274 of the Penal Code. It will be noted that this code section provides that one is guilty of the crime therein mentioned who "uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage . . . ". The prosecution was not compelled to prove that an instrument had been actually used by appellant but it was sufficient to establish that some means was used by her to procure the miscarriage, the act not being necessary to preserve life.

The judgments are affirmed.

Moore, P. J., and McComb, J., concurred.