[Crim. No. 4130. Second Dist., Div. Three. Oct. 24, 1947.]

THE PEOPLE, Respondent, v. WILLIAM H. MALONE, Appellant.

Gavin Morse Craig and Gavin W. Craig for Appellant.

Fred N. Howser, Attorney General, Frank Richards, Deputy Attorney General, W. E. Simpson, District Attorney, Jere J. Sullivan and Robert Wheeler, Deputy District Attorneys, for Respondent.

VALLEE, J. pro tem.—Appellant, a chiropractor and a registered nurse, was charged by information with performing abortions upon a Miss Miller, a Mrs. Ehrlich, and a Mrs. Pherigo (counts I, II, and V, respectively), with offering a bribe (count III), and with soliciting another to accept a bribe (count IV). During the trial, count IV was dismissed. Appellant was convicted by a jury of the offenses charged in counts I, II, III and V. He appeals from the judgments and orders denying his motions for new trial which followed.

In his opening brief appellant attacked the sufficiency of count III upon the ground that it did not plead facts sufficient to state a public offense. Apparently his attack was predicated upon the mistaken belief that count III charged a violation of Penal Code, section 653f. In his brief, the attorney general advised appellant that the offense charged in count III was a violation of Penal Code, section 67, and not of section 653f. In his closing brief, appellant withdraws his attack upon count III and, in effect, abandons his appeal from the judgment rendered upon that count and from the order denying his motion for a new trial with respect thereto. Appellant's abandonment of the point makes it unnecessary for us to pass upon it.

Appellant concedes that the evidence is sufficient to support the charge pleaded in count II, but contends that it is insufficient to support the charges pleaded in counts I and V of the information. He first says that proof that the acts committed by him were not necessary to preserve life is an essential element of the offense charged in counts I and V; that the burden was upon the prosecution to prove that element of the offense; that the prosecution did not sustain the burden. Penal Code, section 274, provides: "Every person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable . . . ." The acts denounced are unlawful "unless the same is necessary to preserve . . . life." This language, although an exception or proviso, it is said, is in fact a part of the description of the offense and, being such, the burden of proving nonnecessity to preserve life is upon the People. (22 C.J.S. 886, § 572.) The question has not been decided in this state. (See *People* v. *Balkwell*, 143 Cal. 259 [76 P.

1017] ; *People* v. *Brewer*, 19 Cal.App. 742 [127 P. 808] ; *People* v. *Card*, 40 Cal.App. 22 [180 P. 53] ; *People* v. *DeVaughn*, 2 Cal.App.2d 447 [38 P.2d 192] ; *People* v. *Knowles*, 7 Cal. App.2d 398 [46 P.2d 788] ; *People* v. *Smitherman*, 58 Cal. App.2d 121 [135 P.2d 674] ; *People* v. *Emery*, 79 Cal.App. 2d 226 [179 P.2d 843].) In each of these cases it was not necessary to decide the question as, in each, there was ample evidence of nonnecessity to preserve life. The weight of authority in other jurisdictions is that the burden is upon the prosecution. (See *State* v. *Meek*, 70 Mo. 355, 358 [35 Am. Rep. 427] ; *State* v. *Longstreth*, 19 N.D. 268 [121 N.W. 1114, 1118, Ann.Cas. 1912D 1317] ; *State* v. *Wells*, 35 Utah 400 [100 P. 681, 683, 136 Am.St.Rep. 1059, 19 AnnCas. 631] ; *State* v. *De Groat*, 259 Mo. 364 [168 S.W. 702, 707] ; *State* v. *Smith*, 336 Mo. 126 [76 S.W.2d 1077] ; *State* v. *Magnell*, 3 Penn. (Del.) 307 [51 A. 606] ; *State* v. *Brown*, 3 Boyce (Del.) 499 [85 A. 797] ; *Howard* v. *People*, 185 Ill. 552 [57 N.E. 441] ; *Diehl* v. *State*, 157 Ind. 549 [62 N.E. 51] ; *State* v. *Aiken*, 109 Iowa 643 [80 N.W. 1073] ; *State* v. *Shoemaker*, 157 Iowa 176 [138 N.W. 381] ; *State* v. *Moon*, 167 Iowa 26 [148 N.W. 1001] ; *State* v. *Sonner*, 253 Mo. 440 [161 S.W. 723] ; *State* v. *Goodson*, 299 Mo. 321 [252 S.W. 389] ; *State* v. *Schuerman*, 70 Mo.App. 518; *State* v. *Darrow*, 56 N.D. 334 [217 N.W. 519] ; *Moody* v. *State*, 17 Ohio St. 110; *State* v. *Glass*, 5 Ore. 73; *State* v. *Clements*, 15 Ore. 237 [14 P. 410] ; *State* v. *Montifiore*, 95 Vt. 508 [116 A. 77] ; note : 153 A.L.R. 1266; *Contra: Williams* v. *United States*, 138 F.2d 81 [78 App.D.C. 147, 153 A.L.R. 1213] ; *State* v. *Lee*, 69 Conn. 186 [37 A. 75] ; *State* v. *Nossaman*, 120 Kan. 177 [243 P. 326] ; *State* v. *Bly*, 99 Minn. 74 [108 N.W. 833] ; *Bradford* v. *People*, 20 Hun. (N.Y.) 309.) ▉ Nonnecessity to preserve life may be shown by circumstantial evidence. (*People* v. *Hoyt*, 20 Cal.2d 306, 313 [125 P.2d 29] ; *State* v. *De Groat, supra*, 259 Mo. 364 [168 S.W. 702, 706] ; *State* v. *Longstreth, supra*, 19 N.D. 268 [121 N.W. 1114, 1118, Ann.Cas 1912D 1317] ; *State* v. *Wells, supra*, 35 Utah 400 [100 P. 681, 136 Am.St. Rep. 1059, 19 Ann.Cas. 631] ; *Diehl* v. *State, supra*, 157 Ind. 549 [62 N.E. 51, 58] ; note, 19 Ann.Cas. 636.) In each of the California cases cited above there was circumstantial evidence which, either alone or with other evidence, was held sufficient proof of nonnecessity to preserve life. When it is shown that the woman was healthy and in a normal condition and that any one of the acts proscribed by Penal Code,

section 274, was used or employed with intent thereby to produce a miscarriage, the evidence is sufficient to sustain the implied finding of the jury that the production of the miscarriage was not necessary to save the woman's life. (*Howard* v. *People, supra,* 185 Ill. 552 [57 N.E. 441]; *State* v. *De Groat, supra; Guiffrida* v. *State,* 61 Ga.App. 595 [7 S.E.2d 34, 36]; *State* v. *Smith, supra,* 336 Mo. 126 [76 S.W.2d 1077]; *State* v. *Longstreth, supra; State* v. *Wells, supra.*) In *People* v. *Knowles, supra,* 7 Cal.App.2d 398, it is said that the testimony of the prosecutrix that she was in good health is sufficient proof of nonnecessity to preserve life. In support of the holding, the court cited *People* v. *Balkwell, supra,* 143 Cal. 259, and *People* v. *Brewer, supra,* 19 Cal. App. 742. Here each prosecutrix testified that she was in good health. Appellant so concedes and he apparently further concedes that her testimony was sufficient to make a prima facie showing of nonnecessity to preserve life, but, says appellant, other evidence in the case overcame the prima facie showing. In support of this argument he cites *People* v. *Murphy,* 60 Cal.App.2d 762 [141 P.2d 755], saying that that case holds that the testimony of the prosecutrix that she was in good health is to be disregarded because of ''contradicting'' evidence of the defense. The Murphy case does not so hold. If it did, it would be out of line with numerous decisions of the Supreme and appellate courts of this state. All that the Murphy case holds, as we read it, is that the corroborative evidence did no more than ''generate a suspicion of guilt'' and that it was, therefore, insufficient. The testimony of the prosecutrix and ''contradicting'' evidence of the defense, if any, merely gave rise to a conflict in the evidence, a conflict for the jury to resolve. (*People* v. *Erno,* 195 Cal. 272, 278 [232 P. 710]; *People* v. *Farrington,* 213 Cal. 459, 463 [2 P.2d 814]; *People* v. *Spencer,* 58 Cal.App. 197, 224 [208 P. 380]; *People* v. *Lamb,* 67 Cal.App. 263, 265 [227 P. 969]; *People* v. *Connell,* 15 Cal.App.2d 380 [59 P.2d 433]; *People* v. *D'Elia,* 73 Cal.App.2d 764, 767 [167 P.2d 253].)

Appellant next says that the corroboration of the prosecutrix was not sufficient as to both counts I and V. Penal Code, section 1108, provides: ''Upon a trial for procuring or attempting to procure an abortion, or aiding or assisting therein . . . the defendant cannot be convicted upon the testimony of the woman upon or with whom the offense was committed,

unless she is corroborated by other evidence." Penal Code, section 1111, provides: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." Appellant says that such cases as *People* v. *Murphy, supra,* 60 Cal.App.2d 762, *People* v. *Davis,* 210 Cal. 540 [293 P. 32]; *People* v. *Braun,* 31 Cal.App.2d 593 [88 P.2d 728], and *People* v. *Gilbert,* 30 Cal.App.2d 321 [86 P.2d 135], hold, first, that in order to determine whether the corroboration was sufficient the testimony of the prosecutrix or accomplice should be eliminated and the rest of the evidence considered by itself, and second, that if the corroborating evidence, by itself, is as compatible with the theory of innocence as with the theory of guilt, a judgment of conviction must be reversed. He grants that *People* v. *Wilson,* 25 Cal.2d 341 [153 P.2d 720], a much later case, is less stringent in its requirements as to corroboration than the earlier cases. ■ No case called to our attention holds that it is for an appellate court to determine whether the corroborating evidence, by itself, is as compatible with innocence as it is with guilt. That is a question for the trier of fact. All that the appellate court does is to determine whether there is any substantial corroborative evidence, and whether, when error is found, the error committed has led to the verdict reached. Under section 4½ of article VI of the Constitution, this court has "the power to weigh, to a limited extent, the evidence in its entirety upon which a conviction has been had; still 'we are not substituted for the jury. We are not to determine, as an original inquiry, the question of the defendant's guilt or innocence.' " (*People* v. *Roe,* 189 Cal. 548, 561 [209 P. 560].) ■ If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also be reconciled with the innocence of appellant will not warrant interference with the determination of the jury. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]; *People* v. *Gomez,* 41 Cal.App.2d 249 [106 P.2d 214].) The nature and character of the corroborative evidence required by

Penal Code, sections 1108 and 1111, have been stated in numerous recent decisions. ■ If corroborating evidence creates more than a suspicion of guilt, it is sufficient even though it "be slight and, when standing by itself, entitled to but little consideration." ■ Corroborating evidence need not establish the precise facts testified to by the witness whose testimony it supports. ■ The testimony of the woman upon whom the act is performed as to her good health does not require special corroboration. (*People* v. *Negra,* 208 Cal. 64 [280 P. 354]; *People* v. *Wilson, supra,* 25 Cal.2d 341; *People* v. *Thompson,* 16 Cal.App. 748, 750 [117 P. 1033]; *People* v. *Lee,* 81 Cal.App. 49, 53 [252 P. 763]; *People* v. *Shaw,* 17 Cal.2d 778, 802 [112 P.2d 241]; *People* v. *Lorraine,* 28 Cal.App.2d 50, 53 [81 P.2d 1004]; *People* v. *Dorrance,* 65 Cal.App.2d 125 [150 P.2d 10]; *People* v. *Collins,* 80 Cal.App.2d 526, 534 [182 P.2d 585].)

■ It is not necessary that all of the material details of the illegal transaction constituting the offense of abortion be corroborated. It is only necessary to supply corroboration which satisfactorily tends to prove the offense and to connect the defendant with the commission of that offense. (*People* v. *Lorraine, supra,* 28 Cal.App.2d 50, 53; *People* v. *Smitherman, supra,* 58 Cal.App.2d 121, 123; *Commonwealth* v. *Drake,* 124 Mass. 21; *Reg.* v. *Boyes,* 121 Reprint 730; 1 C.J. 332, § 112.) ■ The corroboration is sufficient if considered by itself it tends, in some way, to connect the defendant with the offense charged. (*People* v. *Negra, supra,* 208 Cal. 64; *People* v. *Thompson, supra,* 16 Cal.App.2d 748; *People* v. *Watson,* 21 Cal.App. 692 [132 P. 836]; *People* v. *Lee, supra,* 81 Cal.App. 49; *People* v. *Tinnin,* 136 Cal.App. 301 [28 P.2d 951]; *People* v. *Lorraine, supra; People* v. *Hickok,* 28 Cal.App.2d 574 [83 P.2d 39]; 1 Cal.Jur. 114, § 12.)

With these principles in mind, a review of the evidence satisfies us that there was abundant corroboration of each prosecutrix as to the nonnecessity to preserve life, with respect to both questioned counts I and V.

Miss Miller, the woman upon whom the abortion charged in count I was alleged to have been performed, first went to appellant's office on October 5, 1946. She was 20 years of age. Appellant bargained over his fee. He wanted $300. He took $250 and two watches. He packed her and gave her pills. On October 6th and October 7th he traveled from Los Angeles to her home in Santa Monica, where he worked

on her and gave her more pills. On October 7th, appellant removed the fetus. On October 8th, Miss Miller was taken to the General Hospital. During the time appellant had Miss Miller under his care he made no effort to secure the services of a qualified physician and surgeon. The record of the General Hospital shows that she had not had any childhood or adult diseases or any operations, or accidents. A physician who examined Miss Miller at the General Hospital on October 9, 1946, testified that at the time of the examination she had a pulse of 100, temperature 98, respiration 22, blood pressure 120 over 80; the heart was normal; the chest was normal; the abdomen was normal. She was discharged from the hospital on October 17, 1946.

On October 7, 1946, one Press, a friend of Mrs. Ehrlich, the woman upon whom the abortion charged in count II was performed, met appellant in a welding shop where appellant was having an obstetrical tool welded. Press observed the welding, said it looked like a doctor's tool, and asked appellant if he was a doctor. Appellant replied in the affirmative. Press asked appellant if he could take care of a pregnant lady who was in a bad way. Appellant said, "Yes," told Press it would cost $250, and more if he had to give her a transfusion; that that was his line of business, a routine thing. Appellant saw Mrs. Ehrlich that evening (October 7th) in his office. Press was present. Mrs. Ehrlich was in good health. She gave appellant a check. He gave her a pill, worked on her and packed her. As he was doing so, the officers appeared upon the scene. When arrested, defendant offered the arresting officer $1,000 in cash and some real estate if the officer would book him on a misdemeanor charge rather than on a felony charge.

Mrs. Pherigo, the woman upon whom the abortion charged in count V was alleged to have been performed, testified that she was the mother of two children; that she was 25 years of age. She wanted an abortion performed because she and her family lived in one room and her husband was not working. On December 19, 1946, she had missed two menstrual periods but was in good health. Appellant first saw Mrs. Pherigo on that date in the evening at the home of her mother-in-law in Hawthorne where he worked on her, using metallic instruments, packed her and gave her pills. After doing so he, Mrs. Pherigo's sister-in-law, Irene Pherigo, and Mrs. Pherigo, sat around and talked awhile. After that

Mrs. Pherigo went to her own home. The next day she went back to the home of her mother-in-law. Appellant went there in the morning and was there with Mrs. Pherigo in a bedroom when the officers appeared and he was arrested. On December 19, 1946, appellant was waiting trial upon counts I, II, 111 and IV. The arresting officer said to appellant at the time of the arrest, ''Well, doc, I see you are aborting again.'' Appellant did not reply. Mrs. Pherigo was taken immediately to the General Hospital. She was examined by a physician at the hospital on December 20, 1946. The physician who examined her testified that: her temperature was 102; her blood pressure 115 over 60; pulse 100; she appeared to be a fairly well-developed and nourished white female. In his opinion there was an inevitable abortion, induced criminally and septic. Mrs. Pherigo was in the hospital approximately five days. Her hospital record shows that she had a normal menstrual period in early September, 1946; that she missed her periods in October and November; that on December 20, 1946, she was in normal health in every respect except for enlargement of the breasts and a criminal abortion which was probably incomplete.

Appellant admitted the operation charged in each count. His defense was that the operation was necessary, in each instance, to preserve life.

It is not necessary to corroborate the testimony of the aborted woman as to the condition of her health by direct evidence. Her condition may be inferred from any substantial evidence which is not that of the aborted woman. (*People* v. *Negra, supra,* 208 Cal. 64, 69; *People* v. *Wilson, supra,* 25 Cal.2d 341, 347; *People* v. *Bonner,* 5 Cal.App.2d 314 [42 P. 2d 694]; *People* v. *Ross,* 46 Cal.App.2d 385, 395 [116 P.2d 81].) Testimony relating to one count may be considered by the jury in corroboration of the testimony of the woman upon whom an abortion was alleged to have been performed in another count. (*People* v. *Solano,* 48 Cal.App. 2d 126, 130 [119 P.2d 381]; *People* v. *Doetschman,* 69 Cal. App.2d 486, 490 [159 P.2d 418]; *People* v. *Collins,* 80 Cal. App.2d 526, 534 [182 P.2d 585].) Inferences from the defendant's testimony may suffice to corroborate an aborted woman. (*People* v. *Wilson, supra,* 25 Cal.2d 341.) The fact that appellant bargained with respect to his fee is corborative evidence. (*People* v. *Smitherman, supra,* 58 Cal.App. 2d. 121.) Appellant's admissions, active and passive,

and his declarations constitute corroboration. (*People* v. *Armstrong,* 114 Cal. 570, 572 [46 P. 611] ; *People* v. *Sullivan,* 144 Cal. 471, 473 [77 P. 1000] ; *People* v. *Richardson,* 161 Cal. 552, 557 [120 P. 20] ; *People* v. *Wilson, supra,* 25 Cal.2d 341, 347; *People* v. *Brewer, supra,* 19 Cal.App. 742, 747; *People* v. *Watson,* 21 Cal.App. 692, 697 [132 P. 836] ; *People* v. *Bisbines,* 132 Cal.App. 239, 241 [22 P.2d 762] ; *People* v. *Collins,* 4 Cal.App.2d 86, 87 [40 P.2d 542] ; *People* v. *Lorraine, supra,* 28 Cal.App.2d 50, 52; *People* v. *Hickok, supra,* 28 Cal.App.2d 574, 581; *People* v. *Pritchard,* 58 Cal.App.2d 791, 792 [137 P.2d 697] ; *People* v. *Garner,* 60 Cal.App.2d 63, 65 [140 P.2d 146] ; *People* v. *Dorrance, supra,* 65 Cal.App.2d 125, 130.) ▮ Defendant's consciousness of guilt is corroborative of a prosecutrix. (*People* v. *Hoyt,* 20 Cal.2d 306, 313 [125 P.2d 29] ; *People* v. *Card, supra,* 40 Cal.App. 22, 25; *People* v. *Collins, supra,* 4 Cal.App.2d 86, 87; *People* v. *Rice,* 29 Cal. App.2d 614, 620 [85 P.2d 215] ; *People* v. *Garner, supra,* 60 Cal.App.2d 63, 65.) ▮ The circumstances under which the acts were committed, all shown by evidence which was not that of the aborted woman, constitute adequate corroboration. Hundreds of duly licensed physicians and surgeons were available at all hours. The jury had a right to conclude from the facts and circumstances recited that the acts of appellant were those of a guilty man rather than emergencies, as he claimed them to be. (*People* v. *Collins, supra,* 4 Cal.App.2d 86, 87.) The testimony of each prosecutrix with respect to the condition of her health, and nonnecessity of an abortion to preserve life, was fully corroborated by other evidence.

▮ Appellant next says that the court erred in its instructions relative to the testimony and corroboration of accomplices and aborted women. The court gave the following instructions to the jury:

(a) "You are instructed that a conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.

"Section 1111, Penal Code.

"The testimony of an accomplice ought to be viewed with distrust. This does not mean that you may arbitrarily disregard such testimony, but you should give to it the weight to which you find it to be entitled after examining it with care and caution and in the light of all the evidence in the case.

"If the crime of abortion, the commission of which is alleged in Count 2 of the information and involving Emilie Ehrlich was committed as charged then, as a matter of law the witness William Press was an accomplice.

"In the crime of abortion the woman involved is not an accomplice and her testimony may corroborate the testimony of an accomplice of a person attempting an abortion."

(b) "Under our law, the defendant may not be found guilty of the crime charged against him in Count I of the information upon the testimony of Marjorie Miller alone. Her testimony must be corroborated by other evidence. That corroboration may be supplied by the testimony of Miss Mary Prusack, either alone or in connection with other evidence in the case, provided that such evidence offered for the purpose of corroboration meets certain requirements shortly to be stated.

"Also the defendant may not be found guilty of the crime charged against him in Count II of the information upon the testimony of Emilie Mae Ehrlich alone. Her testimony must be corroborated by other evidence. That corroboration may be supplied by the testimony of William Press, either alone or in connection with other evidence in the case, provided that such evidence offered for the purpose of corroboration meets certain requirements shortly to be stated.

"Likewise, the defendant may not be found guilty of the crime charged against him in Count V of the information upon the testimony of Jane Pherigo alone. Her testimony must be corroborated by other evidence. That corroboration may be supplied by the testimony of Irene Pherigo, either alone or in connection with other evidence in the case, provided that such evidence offered for the purpose of corroboration meets certain requirements shortly to be stated."

(c) "Under the law of this state, upon a trial for· procuring or attempting to procure an abortion, the defendant may not be convicted upon the testimony of the woman upon or with whom the offense is alleged to have been committed,

unless her testimony is corroborated by other evidence. The corroboration required by the law must do more than raise a mere suspicion against the defendant, but it is sufficient if by itself it fairly and logically tends to connect the defendant with the commission of the alleged offense. Such corroboration may be provided by the testimony of another witness by evidence showing the circumstances surrounding the alleged transaction, or by the testimony or admissions, if any, of the defendant, or by the testimony of an accomplice if there be such.''

(d) ''Corroborative evidence is additional evidence to the same point. It need not be sufficient to support the conviction. It must do more than cast a suspicion upon the accused. It must in and of itself and independent of the evidence which it supports, fairly and logically tend to connect the defendant with the commission of the alleged offense in question. It may be circumstantial as well as direct, and the entire conduct of the accused himself, both as a witness in his own behalf and at times other than at the trial as shown by the evidence may be looked to for corroborative circumstances.'' (The lettering of the instructions is by appellant for convenience of discussion.)

The court also instructed the jurors that they were ''the sole and exclusive judges of the effect and value of evidence addressed to them and of the credibility of the witnesses who have testified in the case.''

Appellant complains of the portion of the instruction designated (a). He says it left the jury free to give the same weight to the testimony of an accomplice as that of any other witness and that that part in which the jury was told that it should give the testimony of an accomplice ''the weight to which you find it to be entitled,'' together with the instruction that the jurors are ''the sole and exclusive judges'' of the effect and value of evidence addressed to them, created a conflict and confusion. The instruction was a correct statement of the law. We know of no rule of law which says that a jury may not, after applying the tests for weighing the testimony of an accomplice, give it the same weight as the testimony of any other witness. What the law says is that ''the testimony of an accomplice ought to be viewed with distrust'' (Code Civ. Proc., § 2061, sub. 4), and that a conviction cannot be had upon the uncorroborated testimony of an accomplice and that the corroborating evidence

shall tend to connect the defendant with the commission of the offense (Pen. Code, § 1111). The jury was told that an accomplice must be corroborated and it was fully instructed as to the essential requisites of corroborating evidence. No confusion was created by the instruction informing the jurors that they were the judges of the effect and value of evidence. The mere fact that a witness is an accomplice does not mean that his testimony is to be rejected. The jury passes upon his credibility as a witness. If there is other evidence "as shall tend to connect the defendant with the commission of the offense," then the testimony of the accomplice "is to be considered by the jury, as is any other testimony, and must be given the weight to which the jurors may conclude that it is entitled." (*People* v. *Clough*, 73 Cal. 348, 354 [15 P. 5]; *People* v. *Negra, supra*, 208 Cal. 64, 69; *People* v. *Davis*, 210 Cal. 540, 558 [293 P. 32]; *People* v. *Harper*, 25 Cal.2d 862, 876 [156 P.2d 249]; *People* v. *Hoosier*, 24 Cal. App. 746, 752 [142 P. 514]; *People* v. *Flood*, 41 Cal.App. 373, 378 [182 P. 766]; *People* v. *Collier*, 111 Cal.App. 215, 228 [295 P. 898]; *People* v. *Taber*, 13 Cal.App.2d 27, 30 [55 P.2d 1189]; *People* v. *King*, 30 Cal.App.2d 185, 198 [85 P.2d 928]; *People* v. *Ross*, 46 Cal.App.2d 385, 398 [116 P.2d 81].) In support of his contention, appellant relies upon *People* v. *Haack*, 86 Cal.App. 390 [260 P. 913]. In that case it was held that the following instruction was an incorrect statement of the law (p. 396): " 'The court instructs the jury that the testimony of an accomplice is competent evidence, and the credibility of such accomplice is for the jury to pass upon as they do upon any other witness; and, while the testimony of an accomplice will not sustain a verdict when uncorroborated, but if the testimony carries conviction, and the jury are convinced of its truth, they should give to it the same effect as would be allowed to a witness who is in no respect implicated in the offense.' " The instruction was held incorrect because it told the jury that the uncorroborated testimony of an accomplice will not sustain a verdict and immediately advised that if the testimony of an accomplice carries conviction and if the jury be convinced of its truth the jury shall give to it the same effect as would be allowed to a witness who is in no respect implicated in the offense. The court went on to say, in effect, that the testimony of an accomplice may be given the same effect as may be given the testimony of one who is not implicated in an offense if such

testimony be corroborated by evidence tending to connect the defendant with the crime charged, separate and apart from the testimony of the accomplice. The court here did not tell the jury that the testimony of an accomplice may be given the same effect as the testimony of one who is not an accomplice, as was done in the Haack case. Appellant urges that the court should either have told the jury that Mrs. Prusack and Irene Pherigo were accomplices or that the jury should determine whether they, or either of them, were accomplices. Mrs. Prusack had accompanied Miss Miller to appellant's office, talked to him about the fee, and was present while he was working on her. The court expressly instructed the jury that the person who was active in connection with the abortion charged in count II was an accomplice. It left the question of whether Mrs. Prusack or Irene Pherigo was an accomplice to the jury under instructions correctly defining an accomplice. Neither Mrs. Prusack nor Irene Pherigo was, as a matter of law, an accomplice. Under such circumstances, the court properly left the question to the jury. (*People* v. *Darrow*, 212 Cal. 167, 169 [298 P. 1]; *People* v. *Alvarez*, 73 Cal.App.2d 528, 532 [166 P.2d 896].)

 Appellant next contends that the court erred in directing the jury that the testimony of the women who were alleged to have submitted to abortions could be corroborated by accomplices of appellant. In making this contention appellant vigorously attacks the reasoning of the Supreme Court in *People* v. *Clapp*, 24 Cal.2d 835 [151 P.2d 237], and *People* v. *Wilson, supra*, 25 Cal.2d 341. He says that the prevailing opinions in those cases are wrong, that the dissenting opinions are right, that the decisions should be overruled and the reasoning of the dissenting opinions adopted as the law. That is a question for the Supreme Court, not for this court. The Clapp case held that the aborted woman is not, solely by reason of the fact that she submitted to an abortion, an accomplice of the person performing the abortion and that her testimony may be corroborated by testimony of an accomplice. The Wilson case held that the aborted woman and an accomplice could corroborate each other. The criticized instructions were correct statements of the law as enunciated in those cases.

 Appellant next complains because the court did not instruct the jury concerning the law as set forth in the **pro-**

visions of the Business and Professions Code relative to nursing (Bus. & Prof. Code, §§ 2725, et seq.). Appellant's point is grounded upon the fact that he was a registered nurse and his assertion that in performing the abortions for which he was convicted, he was acting under the direction of a duly licensed physician and surgeon. There is no substantial evidence that appellant did any act upon any one of the aborted women under the direction of a physician or surgeon. Further, appellant did not request the giving of any such instruction. He says that it was the duty of the court to give an instruction on the subject *sua sponte*. He is mistaken. The rule is that it is the duty of the court in criminal cases to give, *sua sponte,* instructions on the general principles of law pertinent to such cases where they are not proposed or presented in writing by the parties themselves. It is not the duty of the court to give such instructions upon specific points developed through the evidence introduced at the trial, unless such instructions are requested by the party desiring them. (*People* v. *Warren,* 16 Cal.2d 103, 116 [104 P.2d 1024]; *People* v. *Bender,* 27 Cal.2d 164, 175 [163 P.2d 8].) Any instruction concerning the law with respect to nursing would have been an instruction upon a specific point developed through the evidence introduced at the trial. There was no duty upon the trial court to give any such instruction in the absence of a request therefor.

Appellant next insists that his acts were lawful under the "Nursing Code." By "Nursing Code" he refers to Business and Professions Code, sections 2725, et seq. He again argues that he was acting under the direction of a physician and surgeon and that, therefore, his acts were lawful under the "Nursing Code." As we have said, there is no substantial evidence that appellant was acting under the direction of a licensed physician and surgeon. Business and Professions Code, section 2726, reads: "This chapter confers no authority to practice medicine or surgery or to undertake the prevention, treatment or cure of disease, pain, injury, deformity, or mental or physical condition in violation of any provision of law." Appellant's license as a registered nurse did not authorize him to do any of the acts with which he was charged.

 Appellant next contends that the court erred in giving the following instructions: "A license to practice chiropractic authorizes the holder thereof to practice chiro-

practic in the State of California as taught in chiropractic schools or colleges and also to use all necessary mechanical and hygienic and sanitary measures incident to the care of the body, but shall not authorize the practice of medicine or surgery, nor the use of any drug or medicine now or hereafter included in Materia Medica.'' Appellant's argument is that since he was working under the direction of a licensed physician and surgeon and because he testified that he was not using his chiropractic license and because there was no evidence to the contrary, the quoted instruction was outside the issues presented by the evidence. Appellant testified that he was licensed as a chiropractor in California. He introduced his license as a chiropractor in evidence. He testified that he did not have any "extensive" chiropractic practice. The instruction was within the issues. It was proper to apprise the jury of the proper scope of the practice of a chiropractor. *(People* v. *Marineau,* 55 Cal.App.2d 893, 907 [132 P.2d 22].)

The judgments and orders appealed from are, and each is, affirmed.

Shinn, Acting P. J., and Wood, J., concurred.