[Crim. No. 5897.   Second Dist., Div. One.   Dec. 9, 1957.]

THE PEOPLE, Respondent, v. DONALD CURRY-ALLEN, Appellant.

Donald Curry-Allen, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Herschel T. Elkins, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment of conviction and from a denial of a motion for a new trial in a case involving abortions.

In an information filed in Los Angeles County, the appellant, an osteopathic physician and surgeon, was charged with four counts of abortion as follows:

Count I—an abortion on Jean Cluxton on June 6, 1955;

Count II—an abortion on Mary Scalice on August 19, 1955;

Count III—an abortion on Mrs. R. W. Cavanaugh on August 27, 1955;

Count IV—an abortion on Connie Stamps on October 24, 1955.

The appellant pleaded not guilty to all counts and then withdrew such plea as to count II, and pleaded guilty thereto. Afterwards, he withdrew his guilty plea to count II, and once more pleaded not guilty. It was stipulated that the case might be submitted on the evidence received at the preliminary hearing, both parties preserving the right to produce additional evidence.

The judge found the appellant guilty as charged as to counts I, III and IV, and not guilty as to count II. A motion for a new trial was denied. The proceedings were then suspended and appellant was granted probation for five years as to each count, the probationary terms to run concurrently, and the appellant to pay a $1,500 fine.

As to count I, Jean Cluxton had sexual intercourse sometime in April, 1955, and in the latter part of May she went to the appellant's office. Appellant asked her the nature of her business and she told him that she had a problem which she had heard he might be able to solve for her. Appellant then inquired about her menstrual period and asked her other questions. He then directed her to remove her underclothing and to get on an examination table. She complied, put her feet into stirrups, and a large metal object was inserted into her vagina, and she felt the pressure of appellant's hands upon her stomach. He told her that her problem could be taken care of for $400, which should be

paid in cash and small bills. On June 6th, she went to appellant's office thinking she was pregnant. Other than the pregnancy, she was of the opinion that she was in good health. She placed $400 in 20-dollar bills on his desk. He gave her a small tablet and a glass of water and said it was for her nerves. She then complied with his request and took off her clothes, put on a hospital gown, and got onto the examination table. Appellant was sorting out various instruments, and when he started his procedure with her she felt a small pain and a probing inside of her. He told her that he had placed a pack inside of her and that it was to be removed in 24 hours; also, he gave her some pills for pain, and his card indicating where he could be reached in case she needed him. Further, he wrote on the back of his card "Citrate of Magnesia, take the whole bottle." On the face of the card there was contained his name and designation as a physician-surgeon osteopath, with his address and telephone number. She later removed the pack as directed and noticed a color thereon similar to mercurochrome. On Wednesday she returned to the appellant who gave her some medication to induce cramping. On Friday she felt something pass from her body. The appellant was called but he told her to come to his office. She went to his office, where he treated her. Barbara Whitten was with her at the time and talked to the appellant. He gave Mrs. Whitten some pills for Jean which he said were to prevent infection, and also a prescription for some medicine which "he said was to prevent the milk coming in." Mrs. Whitten identified a picture of the office with the name of the appellant on one window as the office she and Jean Cluxton visited.

As to count III, Mrs. Ralph Cavanaugh was the mother of four children and contacted the appellant in late July or early August. Her husband took her to the office, but she went into the examination room alone. She told the appellant she wanted an abortion and he examined her. Thereafter, she was told by the appellant that she was pregnant and that the fee for the abortion would be $350. On August 15th she returned to the appellant's office with her husband, who spoke to the appellant. Mr. Cavanaugh asked if that type of operation, referring to an abortion, was dangerous, and appellant answered, "Not if it was handled right". On August 27th, Mrs. Cavanaugh went to appellant's office, accompanied by her husband, and she gave appellant $350 in small bills, which her husband had given her for the purpose

of paying the appellant. The abortion was then performed and other things were done similar to the procedures as set forth in count I hereof, and on August 29th, she returned for some further corrective treatment which appellant provided. Mr. Cavanaugh asked appellant if there was any possibility of getting back some part of the money paid from his group insurance and appellant then filled out certain forms, putting down the cause of his treatment as hemorrhoids. The papers were then mailed to an insurance group and Mr. Cavanaugh received $75 therefrom.

As to count IV having to do with Nancy Connie Stamps, she stated that a friend, Mrs. Pauly, called appellant's office and made an appointment for her. On October 22, 1955, about 1 o'clock p. m., she and her brother, John McGuire, and Mrs. Pauly drove to the appellant's office. Mrs. Pauly knew the appellant and when she saw him at the office he said to her, "Hello there, how have you been?" Nancy told the doctor she was pregnant and that she had a little boy and had to work for a living to support the child and herself. She was examined by the appellant and told that the price would be $350. On October 24th, she returned to the office with Mr. Pauly. He stayed in the automobile and she went into the office and gave appellant $350. She was then aborted as described in count I hereof. She was also given a card identical to the one mentioned in count I. On the following Sunday the appellant examined her again and said that she was then in good condition.

Appellant's contention is that the testimony of the abortee in each count was not sufficiently corroborated.

Penal Code, section 1108, provides in part as follows:

"Upon a trial for procuring . . . an abortion, . . . the defendant cannot be convicted upon the testimony of the woman upon . . . whom the offense was committed, unless she is corroborated by other evidence."

In *People* v. *MacEwing*, 45 Cal.2d 218, at page 224 [288 P.2d 257], the court said:

"The most recent decisions have in substance phrased the rule as follows: The corroborating evidence is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth. (Citing cases.)"

In *People* v. *Griffin*, 98 Cal.App.2d 1, 24-27 [219

P.2d 519], cited with approval in the MacEwing case, it is said:

"It is not necessary that the corroborative evidence prove independently either that the defendant is guilty of the offense or that he is guilty beyond a reasonable doubt. (Citing cases.) If this were not true and if it were required that a complete case for the prosecution be established without reference to the testimony of the accomplice, there would then be no occasion to offer the accomplice as a witness.

. . . . . . . . . . . . . . .

"If the corroboration is inculpatory it is not essential that it extend to all of the elements of the offense, nor to every fact and detail included in the testimony of the accomplices. (Citing cases.)

"Conversely, such evidence is sufficient if it tends in some slight degree, at least, to implicate the defendant. It need not be strong. (Citing cases.)

"The testimony of an accomplice need not be corroborated by direct evidence, or, stated in another way: Circumstantial evidence suffices for the purpose of corroboration. (Citing cases.)

"It is sufficient, even though circumstantial and slight, if the connection of the defendant with the alleged crime may be reasonably inferred from the corroborative evidence. (Citing cases.)

"The corroborating evidence is sufficient if it connects the defendant with the commission of the crime in such a way as reasonably to satisfy the fact-finding body that the accomplice is telling the truth. (*People* v. *Trujillo,* 32 Cal.2d 105 [194 P.2d 681]; *People* v. *Henderson,* 34 Cal.2d 340 [209 P.2d 785].) In the Trujillo case, *supra,* our Supreme Court said, at page 110: "Such corroboration must create more than a suspicion of guilt, but is sufficient even though it "be slight and, when standing by itself, entitled to but little consideration." (Citing cases.) . . .'"

(See other abortion cases, *People* v. *Malone,* 82 Cal.App.2d 54, 61 [185 P.2d 870]; *People* v. *Smitherman,* 58 Cal.App.2d 121, 123 [135 P.2d 674]; *People* v. *Morris,* 110 Cal.App.2d 469, 476-477 [243 P.2d 66]; *People* v. *Allen,* 104 Cal.App. 2d 402, 411 [231 P.2d 896].)

A reading of the facts, as heretofore set forth, demonstrates that the abortee in each instance was corroborated sufficiently. Furthermore, there was additional corroboration of Nancy Connie Stamps' testimony in the common plan

used by appellant when he committed the abortions. There was a noticeable similarity of procedure in the transactions which involved the abortees. Each told the appellant she was pregnant and in substance wanted help. Each was examined in substantially the same fashion. Jean Cluxton was told the fee would be $400, however, the others were told the fee would be $350. Each one paid in bills of small denominations. Each was given a small tablet before the operation was performed, and each was told to take a laxative thereafter and to contact the appellant if they needed any additional help.

In the recent case of *People* v. *Ames,* 151 Cal.App.2d 714, at page 720 [312 P.2d 1111], the court set forth:

"The testimony of each of the 10 women is mutually corroborative of the others in that it shows that each abortion was committed in a similar manner and the procedure followed in each instance was the same. (Citing cases.):

"And at [2]page 726 of the same case it was said:

"In addition to the overwhelming physical evidence connecting appellants with the crimes in such a manner as to indicate the abortees were telling the truth, it is now well settled 'that there is sufficient corroboration if the independent testimony of the women shows that each abortion was committed in a similar manner.' (*People* v. *Gallardo,* 41 Cal.2d 57, 64 [257 P.2d 29] and cases cited therein.) Such is the situation in the matter at bar." (See also *People* v. *Bowlby,* 135 Cal.App.2d 519, 527 [287 P.2d 547, 53 A.L.R.2d 1147].)

The judgment and order are, and each is, affirmed.

White, P. J., and Drapeau, J.,* concurred.

---

*Assigned by Chairman of Judicial Council.